LE ROY F. HOVEY, Respondent, *v.* THE DE LONG HOOK AND EYE COMPANY, Appellant.

Corporations — foreign corporation having office within this state merely for purpose of furnishing traveling salesmen with headquarters — failure of corporation to keep stock book at such office does not make such corporation liable to penalty imposed by the statute (Stock Corporation Law, § 33).

1. A foreign corporation owing no debt to this state for its corporate existence, having its place of business in and conducting its business from another state, except as it may use incidental and very limited agencies in this state for the sale of its goods, may properly be exempted from regulations, restrictions and burdens which with justice would be imposed on a foreign corporation coming into our state and taking advantage of its protection and laws for the purpose of here prosecuting its business under the same general methods and perhaps to the same degree as in the state where it was organized.

2. The defendant was organized under the laws of the state of Pennsylvania and in that state had its factory and general offices. It sold its goods in the state of New York through traveling salesmen, who took orders which were transmitted to the office in Pennsylvania subject to approval and which if accepted were filled by shipment from the factory in that state. Although it rented an office in the city of New York, the arrangement was for the purpose of furnishing headquarters for salesmen traveling in that locality where they might meet customers and conduct correspondence. No bank account was maintained in that city; no books of account or goods for sale were kept there and no collections for goods sold were made from that office; no stock transfer books were kept there and no meeting of stockholders, directors or officers was ever held there. *Held*, that failure to keep a stock book at such office does not subject it to the penalty provided in case of failure by a foreign stock corporation having an office for the transaction of business in this state to keep therein a book to be known as a stock book for the inspection of its stockholders and judgment creditors. (Stock Corporation Law, § 33; Cons. Laws, ch. 59.)

*Hovey* v. *De Long Hook & Eye Co.*, 147 App. Div. 881, reversed.

(Argued April 27, 1914; decided June 2, 1914.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 3, 1912, affirming a determination of the Appellate Term which reversed a judgment of the Municipal Court of the city of New York in favor of defendant entered upon a dismissal of the complaint and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles E. Rushmore* for appellant. Section 33 of the Stock Corporation Law does not apply to the defendant corporation. (*People ex rel. Parker Mills* v. *Comr. of Taxes*, 23 N. Y. 242; *Lancaster* v. *A. I. Co.*, 140 N. Y. 576; *Cummer L. Co.* v. *A. M. Ins. Co.*, 67 App. Div. 151; *Burrowes Co.* v. *Caplin*, 127 App. Div. 317;

*Page & Co.* v. *Sherwood*, 146 App. Div. 618; *Penn-Colleries Co.* v. *McKeever*, 183 N. Y. 98; *Harvard Co.* v. *Wicht*, 99 App. Div. 507; *People ex rel. Dives-Pelican Co.* v. *Feitner*, 77 App. Div. 189; *People ex rel. Goetz Silk Mfg. Co.* v. *Wells*, 42 Misc. Rep. 86; 93 App. Div. 613; *People ex rel. Kellogg, etc., Co.* v. *Roberts*, 30 App. Div. 150; *People ex rel. Southern, etc., Co.* v. *Roberts*, 25 App. Div. 13.) The phrase "transaction of business," as used in the section of the statute under consideration, and the phrase "doing business," used in the other sections of this statute and of the other corporation laws are synonymous. (*Hogan* v. *City of St. Louis*, 176 Mo. 149; *C. F. Baptists* v. *Berkey*, 156 Cal. 466.) The phrase "having an office for the transaction of business in this state" refers to an office for the "doing of business in this state," as those words are used in other sections of the same statute and in other laws relating to foreign corporations. (*C. Mfg. Co.* v. *Ferguson*, 113 U. S. 727; *Commercial Bank* v. *Sherman*, 28 Oreg. 573.) If applicable to the defendant, the statute is unconstitutional. Any corporation may carry on interstate commerce in any state without its consent and free from state interference. (*Butler Bros. Shoe Co.* v. *U. S. Rubber Co.*, 156 Fed. Rep. 15; *Robbins* v. *S. T. District*, 120 U. S. 493; *Hatch* v. *L. S. & M. S. R. R. Co.*, 11 Hun, 1; *Wadsworth* v. *E. T. Co.*, 153 App. Div. 737; *Brennan* v. *Titusville*, 153 U. S. 289; *Crutcher* v. *Kentucky*, 141 U. S. 57; *I. T. B. Co.* v. *Pigg*, 217 U. S. 91; *Crenshaw* v. *Arkansas*, 227 U. S. 389; *W., etc., Ry. Co.* v. *Illinois*, 118 U. S. 557; *B. S. & R. Co.* v. *Vickers*, 226 U. S. 205.)

*Lester S. Kafer* for respondent. The words "transaction of business" as used in this statute are different from the words "doing business" as used in the licensing and taxation statutes, and the business conducted by the defendant constitutes the "transaction of business" as

used in this statute. (*Smythe Co.* v. *F. W. G. & S. Co.*, 142 S. W. Rep. 1157; *People ex rel. Miles* v. *M. & B. C. Co.*, 40 Misc. Rep. 282; *Penn Colleries Co.* v. *McKeever*, 183 N. Y. 98.) The words "doing business" as used in the licensing and taxation statutes are different from the words "having an office for the transaction of business" as used in this statute, and the evidence brings the defendant within the meaning of the latter words. (*Henry* v. *Babcock & Wilcox Co.*, 196 N. Y. 302; *Buker* v. *Steele*, 43 N. Y. 346; *U. S. Tel. Co.* v. *W. U. Tel. Co.*, 56 Barb. 46; *St. John* v. *Eberline*, 23 Misc. Rep. 585; *Cotheal* v. *Bronwer*, 5 N. Y. 562.) The statute does not regulate interstate commerce in any just sense. (*Railroad Co.* v. *Fuller*, 17 Wall. 560; *C., M. & S. P. R. R. Co.* v. *Solan*, 169 U. S. 133; *People ex rel. Field* v. *P. R. R. Co.*, 18 J. & S. 456; *Matter of Steinway*, 159 N. Y. 250; *State* v. *I. & I. S. Ry. Co.*, 133 Ind. 69.)

HISCOCK, J.  The defendant is a foreign corporation organized under the laws of, and having its principal office and place of business in, the state of Pennsylvania.  It rented an office in the city of New York for certain limited purposes which will be hereafter described, and this action was brought to recover a penalty for its failure to keep at said office for inspection a book containing a list of its stockholders in alleged violation of section 33 of the Stock Corporation Law. (Cons. Laws, ch. 59.)

Said section, so far as material, reads as follows: "Every foreign stock corporation having an office for the transaction of business in this state, except moneyed and railroad corporations, shall keep therein a book to be known as a stock book, containing the names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof, and the amount paid thereon.  Such stock book shall be open

daily, during business hours, for the inspection of its stockholders and judgment creditors, and any officer of the state authorized by law to investigate the affairs of any such corporation. · * * * For any refusal to allow such book to be inspected, such corporation and the officer or agent so refusing shall each forfeit the sum of two hundred and fifty dollars to be recovered by the person to whom such refusal was made."

It is undisputed that the defendant did fail to keep such a book at its office in New York and that said office was maintained for the "transaction of business" within the literal meaning of the words employed in said statute, and if such meaning is to prevail the decision appealed from should be affirmed. It is, however, urged that said statute is one of several constituting an entire system for the supervision, regulation and taxation of foreign corporations in some measure conducting business in this state; that its language is to be construed harmoniously with that employed in other statutes which are part of this system, and that when so construed is not to have the literal meaning which has thus far been attached to it, and thus is not to be interpreted as applying to corporations performing in this state the very limited acts in carrying on business which the defendant performed. The question thus arising requires for its disposition a somewhat detailed statement of what the defendant did do in the state of New York and a review of these other statutory provisions pertaining to the supervision and regulation of foreign corporations which it is urged throw light on the meaning of the one now before us for interpretation.

As has already been stated, the defendant was organized under the laws of the state of Pennsylvania and in that state had its factory and general offices. It sold its goods in the state of New York through traveling salesmen who took orders which were transmitted to the office in Pennsylvania subject to approval and which if accepted

were filled by shipment from the factory in said state. It rented the office in question in the city of New York, and while some general expressions were used on the trial concerning its nature and the position of the man who had charge of it, and while upon its door there was a sign giving the name of the defendant and the names of two individuals respectively as vice-president and manager, the evidence shows without dispute that the office was kept there simply for the accommodation of traveling salesmen who made it their headquarters for the purposes of correspondence and meeting their customers. A small amount of cash was forwarded thither from the office in Pennsylvania which was used for buying postage, paying car fare, etc., and accounted for to the Pennsylvania office. The office was equipped with a stenographer, typewriter and ordinary office furniture. No bank account was maintained in New York; no books of account or goods for sale were kept there and no collections for goods sold were made from that office; no stock transfer books were kept there and no meeting of stockholders, directors or officers was ever held there. The entire arrangement may be fairly summarized as furnishing and constituting an headquarters for salesmen traveling in that locality where they might meet customers and conduct correspondence.

Without attempting for the moment either to differentiate or to interpret as meaning the same thing such expressions as " to do business " or " doing business " or " carrying on business " or " transacting business," the important provisions designed for the supervision and regulation of foreign corporations prosecuting business in this state are to be found in the General Corporation Law, the Stock Corporation Law and the Tax Law. The first-mentioned statute, after providing amongst other things for the incorporation and acquisition of property by domestic corporations, takes up the subject of foreign corporations and provides that " No foreign

stock corporation other than a moneyed corporation, shall *do business* in this state without having first procured * * * a certificate that it has complied with all the requirements of law to authorize it to do business in this state" (Cons. Laws, ch. 23, sec. 15); that no foreign stock corporation "doing business in this state" shall maintain any action in this state upon any contract made by it in this state without having procured such certificate; that before obtaining such certificate a copy of its charter or certificate and a statement must be filed setting forth the business or objects of the corporation "which it is engaged in carrying on or which it proposes to carry on within the state," and specifying a place within the state which is to be its principal place of business.

The Stock Corporation Law (Cons. Laws, ch. 59), outside of the section now directly under review, contains various provisions prohibiting combinations, providing for mergers, requiring reports to the secretary of state and fixing liabilities of officers, directors and stockholders of foreign corporations which are variously described as "doing business" or "transacting business" or "authorized to do business" in this state.

The Tax Law (Cons. Laws, ch. 60, secs. 181, 182) provides that every foreign corporation authorized "to do business under the General Corporation Law" shall pay a license fee "for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state," and that "For the privilege of doing business or exercising its corporate franchises in this state every corporation * * * doing business in this state" shall pay an annual tax.

Thus we find a systematic series of provisions intended for the supervision, regulation and taxation of foreign corporations described under varying phrases as prosecuting their business in this state. As the question has come before the courts for their determination, what con-

stituted carrying on or doing or transacting business within these provisions, no decision so far as I am aware has held that a case was made out against a corporation by the doing of such things simply as the defendant did in this state. The contrary has been broadly held under the provisions of the General Corporation Law and Tax Law. (*Cummer Lumber Co.* v. *Associated Mfrs. Mut. F. Ins. Corp.*, 67 App. Div. 151; affirmed, 173 N. Y. 633; *Harvard Co.* v. *Wicht*, 99 App. Div. 507; *Burrowes Co.* v. *Caplin*, 127 App. Div. 317; *Page & Co.* v. *Sherwood*, 146 App. Div. 618; *Penn Collieries Co.* v. *McKeever*, 183 N. Y. 98; *People ex rel. Parker Mills* v. *Commrs. Taxes*, 23 N. Y. 242; *People ex rel. Sherwin-Williams Co.* v. *Barker*, 5 App. Div. 246; affirmed, 149 N. Y. 623; *People ex rel. Tower Co.* v. *Wells*, 98 App. Div. 82; affirmed, 182 N. Y. 553.)

And of course there has been a fundamental reason for these decisions. Independent of any constitutional question, a foreign corporation owing no debt to this state for its corporate existence, having its place of business in and conducting its business from another state, except as it may use incidental and very limited agencies in this state for the sale of its goods, might and would properly be exempted from regulations, restrictions and burdens which with entire justice would be imposed on a foreign corporation coming into our state and taking advantage of its protection and laws for the purpose of here prosecuting its business under the same general methods and perhaps to the same degree as in the state where it was organized. Under such latter circumstances it ought to be made to bear some burdens as a recompense for the advantages enjoyed by it.

Coming to the propositions now pressed on our attention, it seems to me that if possible we should construe the crucial phrase of the present statute in harmony with the meaning given to similar words in these other related ones instead of giving to it an exceptional interpretation

which will be at variance with the one given to them. I see no difficulty in so doing.

In the first place, considering simply the language employed such course is reasonably warranted. If it be said, as it has been, that strictly this defendant maintained an office for the "transaction of business" in New York, so it might equally well have been said that strictly within the phrases employed in the other statutes the corporations under review were "doing business," and, therefore, if, as has been held, such literal meaning of terms was not to be inflicted in the cases of the other statutes, there is no good reason why it should be imposed under the present one. The distinction between the meaning of "doing" or "transacting business" under one statute and the term "for the transaction of business" in the present one is, in our judgment, too shadowy and unsubstantial to serve as a secure foundation for the differentiation of the statutes and for the pursuit by the state of opposing policies under them.

Beyond this, I do not see any substantial reasons which should lead us to strain for the purpose of imposing the present regulation on corporations with a rigor which would not be employed elsewhere. This provision by inference and express statement may be regarded as intended to subserve several purposes through requiring an exhibition of the list of stockholders. From its history and its present location in an article entitled "Directors and Officers" and containing juxtaposed sections relating to the election of directors of domestic corporations, it may reasonably be supposed that one object of requiring the list was for use in influencing the election of directors. It is expressly stated in addition that the list shall be open for inspection by judgment creditors and any officer of the state authorized by law to investigate the affairs of such corporation. When we consider these purposes it hardly seems reasonable to assume that the legislature intended all these pains in the case of a

corporation organized and holding its elections and having the seat and body of its business in another state and extending into ours only so far as might be necessary for taking orders for its goods, and which corporation, ordinarily at least, would not be apt to create here stockholders or judgment creditors and, so far as I am aware, would not be subject to investigation by any state officer needing a list of its stockholders. A corporation prosecuting business here through all of the methods ordinarily employed by a domestic corporation, on the other hand, would be apt to create conditions which might very well call for the application of these requirements.

Neither do I think we should be forward in giving to this statute an interpretation which might precipitate embarrassing constitutional questions. The defendant has the right without interference by the state to conduct interstate business which would doubtless include selling its goods in this state. (*Norfolk & W. R. R. Co.* v. *Penn.*, 136 U. S. 114; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Green* v. *Chicago, B. & Q. Ry. Co.*, 205 U. S. 530; *Int. Nat. Text Book Co.* v. *Pigg*, 217 U. S. 91; *Atty.-Genl.* v. *Elec. Storage Battery Co.*, 188 Mass. 239.)

For these reasons we think that the determination of the Appellate Term and the judgment of the Appellate Division should be reversed and the judgment of the Municipal Court affirmed, with costs to the appellant in all courts.

WILLARD BARTLETT, Ch. J., WERNER, CUDDEBACK and CARDOZO, JJ., concur; HORNBLOWER, J., absent; MILLER, J., not sitting.

Judgment accordingly.