AKTIEBOLAGET SEPARATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101328.   Promulgated September 30, 1941.

*Ben A. Matthews, Esq.*, for the petitioner.
*Conway Kitchen, Esq.*, for the respondent.

## OPINION.

OPPER: The question is whether petitioner, a foreign corporation, was a resident within the definition of Revenue Act of 1936 [1] so as to be entitled to avail itself of the credit for dividends received from do-

---

[1] SEC. 231. TAX ON FOREIGN CORPORATIONS.

\* \* \* \* \* \* \*

(b) RESIDENT CORPORATIONS.—A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable without regard to the provisions of subsection (a), but the normal tax imposed by section 13 shall be at the rate of 22 per centum instead of at the rates provided in such section.

\* \* \* \* \* \* \*

mestic corporations allowed to resident and withheld from nonresident foreign corporations.[2]

The definition of a resident corporation for our purposes is one "engaged in trade or business within the United States or having an office or place of business therein." Petitioner concedes that it was "established at the hearing that petitioner was not engaged in business in the United States." It has a principal office in Stockholm, Sweden, exists under the laws of that country and "was engaged in the business of manufacturing centrifugal machinery with interests over most of the world", to use petitioner's language. We take the concession to mean, as we think the evidence shows, that no part of that business was carried on in the United States at any time during the taxable year.

Petitioner focuses its claim upon the second half of the definition and insists that it had an office or place of business in the United States which is sufficient to bring it within the statutory description. We shall, without deciding, accept as a preliminary petitioner's contention that the definition is in the disjunctive; that compliance with either part is therefore sufficient; that Congress would not have used the quoted language had it not intended to cover more than the mere transaction of business, since otherwise the additional phrase would have been superfluous; and that, therefore, it is not necessary that a foreign corporation transact business in the United States within the taxable year if it can show that it has "an office or place of business" here during such year.

But this is not to say that the business aspect of a foreign corporation's relationship to the physical territory of the United States is entirely absent. Accepted definitions of the word "office" are intimately associated with the transaction of business.[3] The conjunction of the words "place of business" in the same phrase indicates that it

---

[2] SEC. 231. TAX ON FOREIGN CORPORATIONS.

(a) NONRESIDENT CORPORATIONS.—There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 13 and 14, upon the amount received by every foreign corporation not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 15 per centum of such amount, except that in the case of dividends the rate shall be 10 per centum, and except that in the case of corporations organized under the laws of a contiguous country such rate of 10 per centum with respect to dividends shall be reduced to such rate (not less than 5 per centum) as may be provided by treaty with such country.

\*  \*  \*  \*  \*  \*

[3] E. g., Webster's New International Dictionary: "The place where a particular kind of business or service for others is transacted; a house, room, or apartment in which public officers and others transact business; the building, room, or department in which the clerical work of an establishment is done; a countinghouse; the room, etc., in which the business or work of some particular department of a large concern or institution is carried on or from which it is directed; as, the register's *office;* a lawyer's *office;* the *office of a* school or hospital; freight *office.*"

was in that sense that Congress was using the term. This assumption is accepted by petitioner, for it says in its brief: "In the latter alternative 'office' and 'place of business' are so nearly synonymous as to be so in effect." We think it necessary, therefore, to construe the second alternative in the sense that the words were more fully "office for the transaction of business or other place of business." And there is no reason to assume that Congress used the word "business" with two different meanings in the same section; so that the activities which would be required for a corporation to qualify as being "engaged in business" would appear to be no different from those for the conduct of which it would be necessary that its location in the United States be created in order for that to be considered a "place of business."[4] Such a construction does no violence to our acceptance of the view that the statutory language goes beyond the mere transaction of business. The two concepts may not be mutually exclusive, but they are certainly different. One may transact business without having a regular place for that activity, such as an office. Or one may have a place for the transaction of business within a taxable year without, for one reason or another, actually engaging in the business for which the office was created.

The question then appears to be whether what petitioner established was an office for the transaction of its business.[5] If it was, then even though no business was transacted there, the definition would apply. If it was not, since the admitted absence of the transaction of any business within the United States would prevent petitioner from falling within the first portion of the definition, the combination would be fatal to its contention.

We think petitioner's evidence, which we agree was not controverted, fails to establish that the space which it leased was designed for the transaction of any part of its business. A summary description of that design may be quoted from petitioner's brief:

* * * Petitioner, for many years, had owned stock in two domestic corporations. Its income from sources within the United States was substantial. To receive and dispose of such income, petitioner needed some reliable person in this country who could be in daily attendance at its New York office, ready to attend to its interests as instructed by correspondence or cable.

---

[4] "The distinction between the meaning of 'doing' or 'transacting business' under one statute and the term 'for the transaction of business' in the present one is in our judgment too shadowy and unsubstantial to serve as a secure foundation for the differentiation of the statutes and for the pursuit by the state of opposing policies under them." *Hovey v. De Long Hook & Eye Co.*, 211 N. Y. 420; 105 N. E. 667.

[5] This is the construction placed upon this part of the statutory definition by respondent in his regulations which, for the reasons stated, we regard as entirely justified: "The term 'office or place of business' however implies a place for the regular transaction of business and does not include a place where casual or incidental transactions might be or are effected." Regulations 94, art. 231 (1) (b).

This in our view falls short of the transaction of business. The object was to collect dividend income. That was not only a purpose less than the transaction of petitioner's business, it was less than the transaction of any business. *McCoach* v. *Mine Hill & Schuylkill Haven Railroad Co.*, 288 U. S. 295. The location was used for the purpose for which it was procured and yet petitioner concedes that no business was transacted in the United States. In fact, petitioner seems to admit that the purpose of the arrangement as it was established was not the transaction of business; for the brief goes on to refer to the leased space as a place "which, should the occasion arise, might even be utilized for the conduct of petitioner's business." There is thus no contention and no showing that the purpose which petitioner had presently in mind in leasing the space was the conduct of its business or that the occasion had arisen or was imminent which would create that purpose.[6]

We are, therefore, of the opinion that the activities for which petitioner rented desk space and hired a part-time employee were not the transaction of any part of its business; that, therefore, it had no "office or place of business" in the United States at any time during the taxable year; and that, accordingly, it is not entitled to the credit available to resident foreign corporations.

Reviewed by the Board.

*Decision will be entered for the respondent.*

KERN, dissenting: I respectfully dissent from the reasoning and conclusion of the majority opinion. That conclusion may be paraphrased as follows: For a foreign corporation to become a resident corporation within the meaning of section 231 (b) of the Revenue Act of 1936, it is necessary that it either engage in trade or business within the United States, or have "an office or place of business" within the United States which is used or established for the purpose of being used in the conduct, within the United States, of the corporation's activities which are a part of its engagement in business therein.

___

[6] This accords with representations made to respondent, as set forth in his letter of May 21, 1938, introduced as an exhibit on behalf of petitioner, that:

"The corporation [petitioner] states its representative is vested with no authority to conduct business or engage in business activities of any character on behalf of the corporation and 'she has not done so'; that during the taxable year the only activities of the corporation in the United States consisted of the receiving of dividends * * *.

"Although the corporation has on various occasions made purchases of United States products for use in its foreign business from several sources within the United States, and has made sales of its products in Sweden for shipment to the United States, all of such purchases and sales have been made and carried out by correspondence at its Stockholm office and 'none of them through its New York office'."

The further statement by respondent in that letter that petitioner "became a resident foreign corporation" must be either an inadvertent acceptance of petitioner's own representations or a misconstruction of the applicable law as treated in the present opinion, by which this Board can not consider itself bound. See footnote 5.

Thus, according to the *rationale* of the majority opinion, when a foreign corporation carries on no trade or business here, and has nc intent to do so, it can not be said to have "an office or place of business" within the United States.

The attempt, in the majority opinion, to identify the maintenance of an office with the carrying on of trade in this country disregards a distinction clearly made by the statute. Congress sets up two categories in the act and we are not to confuse the two. Concededly here the petitioner was not engaged in trade in America, but that is no reason to assert that it did not have an office. The disjunctive use of. the two phrases "engaged in trade or business" and "having an office or place of business" in the United States occurs not only in the statute but in the reports of both houses of Congress on the revenue bill, House Rept. 2475, 74th Cong., p. 9, et seq.; Sen. Rept. 2156, 74th Cong., p. 21, et seq., and clearly indicates, by all canons of construction, see *Crooks* v. *Harrelson*, 282 U. S. 55, that two different situations were contemplated by Congress. Section 143 which deals with the withholding of tax of nonresident alien corporations, also uses the same phrases here in question and uses them disjunctively. We see no ground for supposing that such careful repetition of alternative conditions was meaningless.

When legislation is unambiguous, resort to legislative intent in the proceedings of Congress is unnecessary. However, if we do look to the Congressional reports, *loc. cit. supra*, we find that the provision was introduced in the 1936 Revenue Act for administrative convenience and was thought by the House Ways and Means Committee to be "productive of substantial amounts of additional revenue, since it replaces a theoretical system impractical of administration in a great number of cases." Foreign corporations not engaged in trade in the United States or not having an "office or place of business" were taxed at 15 percent of gross income and collection, as the report of each House mentions, and this tax was to be withheld at the source under section 143. Foreign corporations engaged in trade or having an office or place of business in the United States, on the other hand, were to be taxed at a higher rate, 22 percent, but on net, not gross, income. There was some difference between the Houses on the rate, but none on the principle applicable, which obviously differentiated between resident and nonresident foreign corporations on the simple and sound administrative ground of collectibility and ease in administration of the tax, the lower rate being applied when withholding at the source was necessary, and the higher rate when the presence of the corporation in the country through trade carried on here or by the maintenance of a business headquarters with a responsible agent would enable the Treasury to collect directly from the corporation or its agent.

Likewise, the difference in rate between the two classes was sought to be equalized by allowing the resident foreign corporation the benefit of deductions, the maintenance of proper books at an "office or place of business" within the country making the determination of income received from American sources and of deductions in respect of such income (and by express provision so limited) feasible.

When the statutory phrase now in question is read in the light of the statutory purpose which we have set out, two significant things appear: First, that the whole provision as to foreign corporations was one of administrative convenience in collecting the tax laid, and, consequently, was not the conference of an exemption or other special benefit on the foreign corporation claiming residence which must be construed strictly in a tax act; and, second, that the test of residence is the practical one of the collector finding a properly authorized agent of the corporation at a fixed office or place where adequate records of the corporation's American income may be found, and where control over that income is retained, and where an agent may always be found by the Government in the event of differences in taxes paid and claimed. These are all practical tests; and too meticulous consideration of the physical aspects of the "office", on the one hand, or speculation on the metaphysical concept of the maintenance of an office for some future conduct of business in the United States, on the other hand, are alike wide of the mark in reaching a sound conclusion as to whether the particular foreign corporation is taxable as a resident or not.

My opinion that the taxpayer here was a resident foreign corporation having the requisite American "office" does not require the disapproval of Commissioner's Regulations 94 and 101, art. 231–1, where the term is said to imply "a place for the regular transaction of business and does not include a place where casual or incidental transactions might be, or are, effected." I can not believe, however, that its meaning should be restricted by the same criteria as those applied to the doing of business within the country. Doing business and maintaining an office are two different things, and whatever deference should be paid to administrative construction, it can not be allowed to alter the clear meaning of the statute. I think that the business purpose for which the New York office, in the instant case, was used, the collection of petitioner's revenue from American corporations, was a "regular" business within the meaning of the regulations and not "incidental" or "casual"; and, as such, complies with them as well as with the statute.

LEECH and MELLOTT agree with this dissent.