B. W. Jones Trust for Brigadier General O. C. Herbert, by D. B. Nevius, One of the Trustees, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

B. W. Jones Trust for Mrs. N. C. Priestley, by D. B. Nevius, One of the Trustees, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

B. W. Jones Trust for Mrs. I. S. Channer, by D. B. Nevius, One of the Trustees, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

B. W. Jones Trust for Mrs. C. E. Jameson, by D. B. Nevius, One of the Trustees, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

B. W. Jones Trust for Mrs. M. E. Holmes, by D. B. Nevius, One of the Trustees, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 104404–104408.   Promulgated March 10, 1942.

*William Cornell Fleming, Esq.*, and *Ralph B. Plager, Esq.*, for the petitioners.

*Walt Mandry, Esq.*, for the respondent.

532

OPINION.

Arundell: The only issue before us is whether or not capital gains realized by petitioners in the taxable years are taxable to petitioners or whether by virtue of the provisions of section 211 (a) of the Revenue Act of 1936, as amended by section 501 of the Revenue Act of 1937,[1] and section 211 (a) of the Revenue Act of 1938, such gains are not taxable in the hands of petitioners. The amount of the capital gains realized is not in dispute.

Prior to the enactment of the Revenue Act of 1936, the taxing authorities experienced great difficulty in collecting the tax from nonresident aliens. In 1936 a new method of taxation of such aliens was substituted for the former "theoretical" method which had been found impractical in application. See H. R. No. 2475, 74th Cong., 2d sess.; S. R. No. 2156, 74th Cong., 2d sess. In brief, after the enactment of the Revenue Act of 1936, the taxation of aliens became more simplified. Where the alien is a resident of this country, is engaged in a trade or business here, or has an office or place of business in the United States, he is taxed, with certain limitations, in the

---

[1] (a) No United States Business or Office.—There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 10 per centum of such amount, except that such rate shall be reduced, in the case of a resident of a contiguous country, to such rate (not less than 5 per centum) as may be provided by treaty with such country. The tax imposed by this subsection shall not apply to any individual if the aggregate amount received during the taxable year from the sources above specified is more than $21,600.

[Section 211 (a) of the Revenue Act of 1938 is substantially the same as the one above quoted.]

same manner as a citizen of the United States. Where, on the other hand, the taxpayer is a nonresident alien doing no business here and having no office or place of business in the United States, he is taxed on his fixed or determinable annual or periodic income from sources within the United States and the tax is withheld at the source. Capital gains are not taxed to the latter class of alien. H. R. No. 2475, 74th Cong., 2d sess.; S. R. No. 2156, 74th Cong., 2d sess. Petitioners claim that they are taxable under section 211 and consequently the capital gains realized by petitioners in the taxable years are not taxable to them.

In order to be taxed under section 211 (a) rather than under sections 161 and 162, petitioners must show that the trusts were (1) nonresident alien entities, (2) that they were not engaged in a trade or business within the United States, and (3) that they did not have an office or place of business in the United States.

The parties assume, and we think correctly, that trusts may be taxed under section 211, *supra*, the same as individuals. In his regulations dealing with section 211 (a) [Regulations 94, art. 211–2 (Revenue Act of 1936); Regulations 101, art. 211–2 (Revenue Act of 1938)], respondent defines a nonresident alien individual as an individual "(a) Whose residence is not within the United States; and (b) Who is not a citizen of the United States. The term includes a nonresident alien fiduciary." Thus, we must determine whether the trusts, treated as individuals, under section 211 (a), come within the requisites of that section.

The provisions of section 211 (a) clearly indicate that a taxpayer may not be taxed under that section unless all three of the requisites enumerated, *supra*, are fulfilled. It is apparent therefore that if the trusts are resident alien entities their income tax can not be computed under section 211 (a). This is so even though they might show that they did not engage in a trade or business in the United States and had no office or place of business here.

We are of the opinion that the trusts are resident rather than nonresident entities. There is little question of their alienage. They were created under English law by an English settlor. All of the beneficiaries and three of the four common trustees were English. Such characteristics, however, point only to the alien nature of the trusts and have little effect upon a determination of the resident or nonresident status. We think that the "residence" of an entity should be determined by analogy to that of an individual. Respondent in article 211–2 of Regulations 94 and 101, interpreting the Revenue Acts of 1936 and 1938, respectively, has the following to say concerning the residence of an alien:

An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax.

Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident.  *   *   *

Similar statements have appeared in respondent's regulations since his regulations interpreting the Revenue Act of 1918 (art. 312, Regulations 45). That there was an intention to keep the securities in this country is evident from the agreement of the trustees of March 9, 1926. That there was not even a "floating intention" to take the securities out of the United States is apparent from the establishment and maintenance of an office under the title "Jones, Jones, Priestley & Nevius." The whole tenor of the March 9, 1926, agreement was that the trustees should maintain a permanent establishment in the United States under the control of a trustee. The intendment of the agreement was carried out throughout the years and during the taxable years we find the certificates physically located in this country, the maintenance of an office in the city of New York under the supervision of Nevius, and bank accounts in New York banks kept in the names of the trustees. All dividends and interest were paid to Nevius at the office of the trusts in New York and there the records and accounts of the American activities of the trusts were kept. Tax returns were made from the New York office and from there accountings were rendered to the English trustees. From time to time securities of the several trusts were purchased and sold through that office.

The trusts make no distinction between the powers and the duties of the several trustees. They are all equal. It is suggested that, because trustee Jones is a son of the settlor, he was listened to by the others, and particularly by Nevius, as to what course he should follow in the management of the affairs of the several trusts. If this be true it is of no importance. It often happens where several persons are associated together, whether as trustees or otherwise, that one may have a more marked influence in the handling of the joint affairs than do the others.

A problem somewhat similar to the one before us has been considered in determining the "situs" of trusts for purposes of taxation. Bogert in his treatise "Trusts and Trustees", vol. 2, ch. 15, sec. 262, p. 842, states:

  *   *   *   Where there are two or more trustees residing in different states, the courts are in fairly general agreement, where a different rule is not established by statute, that the property will be taxable in the state of residence of the trustee who has actual custody or control of it.  *   *   *

He further states on p. 841 of the same chapter:

In the absence of contrary statute, the weight of the case authority supports the principle that the executor, administrator, or trustee is to be regarded for

the purposes of property taxation as the owner of the trust property. Hence such property may and ordinarily will be assessed for taxation in the state in which the trustee is domiciled, even though the beneficiaries of the trust reside in some other state. The fact that the trustee derives his appointment from a court in another state is immaterial, at least where the property is actually in the possession or control of the trustee at his domicile. * * *

* * * There is little or no tendency to hold that the mere fact that a trustee derives his authority from the court of a state warrants the taxation of trust property in that state, without regard to the residence of the trustee or the place where the evidences of the trust property are kept and its affairs transacted.

Thus, in matters of jurisdiction to tax the present trusts would be treated as having a situs in this country rather than elsewhere.

Nor are we disturbed by petitioners' argument that these trusts must be regarded as having an English residence by reason of the presence of three of the trustees in England and the particular activity of Jones, one of their number, and the fact that the trusts were English in form, created by an Englishman for English beneficiaries, and subject to the jurisdiction of that country. It may be that they have a residence in England, but if such be the fact, there would be no inconsistency in holding that these trusts were likewise resident within the United States. Beale, Treatise on the Conflict of Laws, sec. 11.2, p. 123. See *Chambers* v. *Hathaway*, 187 Cal. 104; 200 Pac. 931; *In re Paullin's Will*, 92 N. J. Eq. 419; 113 Atl. 240.

We conclude that the long continued and varied business activities of these trusts within the United States are such, in our opinion, as to deny them the status of a nonresident alien.

While our holding that the trusts were resident aliens within the meaning of the statute disposes of the instant proceeding in favor of respondent, we are of the opinion that petitioners fail in their claim on still another ground. The office which they maintained in this country was an "office or place of business" within the meaning of section 211 (a). The case of *Aktiebolaget Separator*, 45 B. T. A. 243, does not compel a contrary conclusion. In that case the taxpayer was a manufacturing corporation with principal offices in Sweden. It owned stock of two domestic corporations and rented space in the offices occupied by those corporations in New York, New York. In the proceeding before this Board the taxpayer conceded that it was not engaged in business in the United States. The space rented by the taxpayer was not used for the transaction of business nor was it intended for such purpose. It was established merely as a place to receive the dividends of two subsidiary corporations resident within the United States. Such quarters could not be termed an "office" in any real sense and we so held, stating that an office or place of business means a place for the transaction of business. Mere statement of the essential facts of *Aktiebolaget Separator*, *supra*, indi-

cates the marked distinction of that case from the instant proceeding. Here there is nothing artificial about the office maintained for the trusts. This office was not merely a name or desk space for receiving dividends (see *Recherches Industrielles, S. A.*, 45 B. T. A. 253, but an office in the sense of the common everyday conception. It was not established for purposes of compliance with a statute but was maintained in this country because of the administrative necessity of having local supervision of its affairs. Whatever affairs of the trusts were conducted in this country were transacted through that office. For these reasons respondent must be sustained.

*Decision will be entered for the respondent.*