### ELLERS v. LATIMER et al.
No. 739.

District Court, N. D. New York.
March 16, 1942.

Lester P. Schoene, Gen. Counsel, Railroad Retirement Board, of Washington, D. C. (Myles F. Gibbons, of New York City, of counsel), for defendants.

COOPER, District Judge.

This is a suit by the plaintiff to have the District Court in this District review the decision of the Railroad Retirement Board denying the plaintiff a pension and to direct the Board to grant the plaintiff a pension under the Railroad Retirement Act of 1937, § 10, 50 Stat. 314, 45 U.S.C.A. § 228j.

The plaintiff moves to strike out certain denials in the defendant's answer as in direct conflict with the proof in the case and for a summary judgment for the plaintiff reversing the action of the Railroad Retirement Board and directing the Board to grant the plaintiff the pension sought.

The defendant moves for summary judgment dismissing the action in accordance with Rule 56 of the Rules of Civil Procedure for the District Court of the United States, 28 U.S.C.A. following section 723c.

Among the grounds upon which the defendant bases its motion is that this Court has no jurisdiction over the three individual defendants constituting the Railroad Retirement Board.

Upon the argument the plaintiff conceded that this Court did not have jurisdiction of the three individual defendants and consented that the action be dismissed as to the three individual defendants and that question is now out of the case.

One of the chief grounds upon which the defendant relies in this motion for summary judgment dismissing the action is that the District of the United States, for the Northern District of New York, has no jurisdiction of the Railroad Retirement Board, for the reason that no office of the Railroad Retirement Board exists within the Northern District of New York, within the meaning of the Statute.

That there is an office of the Railroad Retirement Board in the City of Albany in the Northern District of New York is not disputed but the defendant asserts that this is not an office within the meaning of the Statute.

The complete text of the jurisdictional section is as follows:

"Section 11. An employee or other person aggrieved may apply to the district

Homer E. Peters, of Albany, N. Y., for plaintiff.

court of any district wherein the Board may have established an office or to the District Court of the United States for the District of Columbia to compel the Board (1) to set aside an action or decision of the Board claimed to be in violation of a legal right of the applicant or (2) to take action or to make a decision necessary for the enforcement of a legal right of the applicant. Such court shall have jurisdiction to entertain such application and to grant appropriate relief. The decision of the Board with respect to an annuity, pension, or death benefit shall not be subject to review by any court unless suit is commenced within one year after the decision shall have been entered upon the records of the Board and communicated to the person claiming the annuity, pension, or death benefit. The jurisdiction herein specifically conferred upon the Federal courts shall not be held exclusive of any jurisdiction otherwise possessed by such courts to entertain actions at law or suits in equity in aid of the enforcement of rights or obligations arising under the provisions of this Act [sections 228a–228r] or the Railroad Retirement Act of 1935 [former sections 215–228a of this title]." This is now Section 228k.

The defendant cites no case deciding what is an office of the Railroad Retirement Board within the meaning of Section 11.

The cases cited by the defendant in general held that a Court has no jurisdiction with respect to persons or things which exist outside of and not within, the territorial limits of the territory in which the Court has jurisdiction. Such cases have no analogy here because there is a statute here giving the Court jurisdiction and whether or not the Court has jurisdiction depends upon whether or not there is an office of the Railroad Retirement Board in this District within the meaning of the Statute.

The defendant cites one case which it holds is in close analogy and to which attention will be given. This is the case of Hovey v. De Long Hook & Eye Company, 211 N.Y. 420, 105 N.E. 667.

This case arose under Section 113 of the Stock Corporation Law of the State of New York, Consol. Laws, c. 59. This Section provides that every foreign corporation except a moneyed or railroad corporation, having an office for the transaction of business in this state, shall keep therein a book to be known as a stock book, containing names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their place of residence, the number of shares held by them respectively, the time when they respectively became the owners thereof, and the amount paid thereon.

This statute provides that every foreign corporation having an office for the transaction of business in this state, which refuses or neglects to keep such stock books or to keep any stock book open for inspection, as under the statute required, shall forfeit $50.00 per day for every day that it shall so neglect or refuse.

It appears in the Hovey case that the defendant was a Pennsylvania Corporation, which sold its goods in the State of New York through traveling salesmen, who took orders which were transmitted to its office in Pennsylvania, subject to approval, and which, if accepted, were filled by shipment from the factory in Pennsylvania.

Although it rented an office in the city of New York, the arrangement was for the purpose of furnishing headquarters for salesmen traveling in that locality, where they might meet customers and conduct correspondence. No bank account was maintained in that city and no books of account or goods were sold or kept there and no collections for goods sold were made from that place. No stock transfer books were kept there and no meeting of creditors, officers or directors was ever held there.

The Court of Appeals held that the defendant foreign corporation did not maintain an office for the transaction of business in this State within the meaning of Section 113.

The case now under consideration contains no such condition or limitation, or description, or qualification of an office as defined in the State Statute.

A careful consideration of this case shows that it has no real analogy to the case at bar because of the fact that the Federal statute merely provides an "office" with no other words.

Defendants seem to place much reliance upon regulations adopted by the Railroad Retirement Board claimed to be adopted pursuant to the authority of the statute and to be within the statute.

The only provisions of such regulation which has any interest here is the regula-

tion relating to offices of the Railroad Retirement Board. The regulation effective as of June 1, 1938 contains the following: "Section 62:15. Office of the Board— The only office established by the Board is in the District of Columbia (Headquarters of field forces are not offices within the meaning of this section). (Section 10, 50 Stat. 314; 45 U.S.C. Supp. III, 228-j [45 U.S.C.A. § 228j])."

Subdivision 4 of 228j, authorizes the Board as follows: "The Board shall establish and promulgate rules and regulations to provide for adjustment of all controversial matters arising in the administration of such section, with power as a board or through any member or designated subordinate thereof; to require and compel the attendance of witnesses, administer oaths, take testimony, make all necessary investigations in any manner involving annuities and other payments and shall maintain such offices, provide such equipment, furnishing supplies, services and facilities and employing such individuals and providing for their compensation and expenses as may be necessary for the proper discharge of its functions."

These regulations were declared to supersede all regulations promulgated on November 22, 1937, December 10, 1937, December 31, 1937, January 17, 1938, January 25, 1938, March 22nd, 1938, and April 4, 1938.

Here is the Railroad Mediation Board adopting a regulation which in effect limits and modifies the Statute. The regulations say that the only office of the Board is in the District of Columbia, but the statute passed on August 29, 1935, and amended by the Act of June 24, 1937, Section 11 (Now 228k) says that "an employee or other person aggrieved may apply to the district court of any district wherein the Board may have established an office or to the District Court of the United States for the District of Columbia * * *."

The statute related to railroad employees on all the railroads of all the 48 states of the Union from Maine to California. Congress clearly contemplated that there should be offices of the Railroad Retirement Board in various parts of the United States, since the railroad employees who might come under the act might live anywhere in the United States and that the transaction of the Board's business would probably require many offices. Congress therefore provided that suit might be brought in any Federal Judicial District of the United States in which the Board maintained an office, as well as in the District of Columbia.

But the Railroad Retirement Board, by the above mentioned regulation, has attempted to prohibit the bringing of any suit to review its decision in any district court of the United States except the Federal Court in the District of Columbia, and the Board under the above regulation (Section 62.15) makes the unwarranted statement that all offices of the Railroad Retirement Board except that in the District of Columbia are not offices within the meaning of the Statute.

The Board was apparently acting in the arbitrary manner of some executive agencies who seem to resent review of their decisions by the Courts. The Statute when it says "office" contains no limitations on the word "office". Within the meaning of the statute an office established anywhere for any purpose is an office within the Statute and the Board clearly transcended its authority and attempted to override the Statute by the above requirements limiting its office to the District of Columbia.

When Congress enacted the Railroad retirement law it clearly knew that it was for the benefit of thousands of railroad men all over the nation.

Congress clearly knew that some of these railroad men might from time to time desire to appeal from the Decision of the Board and it therefore provided that such review might be had in any district of the United States in which the Court maintained an office.

The above regulation of the Board was clearly an infringement upon the power of Congress and the intent of the section. Having so clearly in mind, as Congress had, when it adopted the statute, it is inconceivable that Congress considered the possibility that railroad workmen seeking review of the Decision of the Board would be compelled to go thousands of miles from their homes to the City of Washington to obtain such review.

Congress knew and the Statute clearly indicates, that the Railroad Retirement Board would be compelled to maintain many offices throughout the nation to carry

on this work and clearly stated that the Court in any District in which such an office was located would have jurisdiction of the suit in review.

The regulation limiting the office to the District of Columbia continued in effect until August 20, 1940, when the Board amended the foregoing regulation and provided by its order 48-424, dated August 20, 1940, as follows:

"Section 262:15. Offices of the Board.

"The main office established by the Board is located in the District of Columbia. The only other offices established by the Board are regional offices located at New York, New York; Cleveland, Ohio; Chicago, Illinois; Atlanta, Georgia; Minneapolis, Minnesota; Kansas City, Missouri; Dallas, Texas; Denver, Colorado; Seattle, Washington; and San Francisco, California. (Offices of District Managers or any other field forces are not offices within the meaning of this section)." Section 10, 50 Stat. 314, 45 U.S.C. Supp. III, 228j [45 U.S.C.A. § 228j].

It would seem that the Board, after its regulation of June 1938, providing that the only office should be in the District of Columbia, may have realized that a regulation providing for an office only in the District of Columbia would be in conflict with the Statute.

Accordingly, it established what it called regional offices, one on the Atlantic Seaboard, one in the South, two in the Middle West, one in Texas, two in the far Middle West, one in Colorado, two on the Pacific Coast.

And again the Board says that offices of District managers or any other field offices are not offices within the meaning of the Section.

Again it must be held that the Board had no power to provide that offices of District Managers or other field offices were not offices within the meaning of the section. Such regulation limited and transcended the statute and is invalid.

■ While the Board has power to make regulations within the Statute it has no power to put any such modification or limitation on the Statute.

■ So it seems to this Court that it must be held that any office of district managers or field forces established by the Railroad Retirement Board in the territo-

rial jurisdiction of any District Court of the United States gives the District Court of that District jurisdiction under Section 11 of the Statute (Now Section 228k).

This brings us to the question of whether the Board's decision denying the plaintiff a pension is supported by substantial evidence.

The hearing in this case was held in the City of Washington on October 30, 1939. This was during the period of time from June 23, 1938, to August 27, 1940, when the Board had adopted the section heretofore set forth herein providing that "the only office established by the Board is in the District of Columbia."

The plaintiff's evidence consisted of two affidavits of his own and two or more affidavits of William H. Nolan, who at the time was postmaster at Stillwater, N. Y., and an entirely disinterested witness, which show clearly that plaintiff was not discharged but was on furlough at all times, together with letters from certain heads of departments or divisions of the Company, the clear and unmistakeable inference of which was that he had not been discharged but was on furlough.

The plaintiff also filled out a form provided by the Retirement Board and wrote certain letters to the Board, to which reference will later be made.

The other evidence in the case, that is, evidence claimed to support the Board's position, does not contain the testimony of a single witness, although the Board had ample power and funds to subpoena witnesses, nor a single affidavit.

The Board's evidence consists almost entirely of reports of investigations made by the Board's employees, letters from officers of the Company and also forms prepared by the Board and sent to the Company to be filled out by some of its officials, but these forms were not sworn to in any single case.

The evidence presented by the plaintiff clearly shows a rule or regulation or practice of the Railway Company obtaining at Rotterdam Junction by which, if the services of an employee were discontinued, and the services of such employee were no longer immediately necessary, such employee was on furlough and entitled in order of seniority to displace any employee subsequently employed at Rotterdam Junction, who is junior in rank to any one of the furloughed employees.

The history of the work at the Rotterdam Junction yard and terminal becomes important to understand.

The yard or terminal at Rotterdam Junction had been maintained for many years, at least as far back as 1904, first under the Fitchburg Railroad and later under the Boston & Maine Railroad, when the latter took over the Fitchburg Railroad. This work continued until November 18, 1931, when the railroad decided to abandon the operations at Rotterdam Junction and put the employees there on furlough. The plaintiff was notified by the said William Nolan, then his foreman, on or about that date, that the terminal would be abandoned on November 18, 1931, that there would be no further immediate work for him at that terminal and that he was on furlough.

During the next 5½ months the servicing of the engines which ran trains Nos. 62 and 63, formerly done at Rotterdam Junction, was done at the Mechanicville yards.

In the early part of May, 1932, the servicing of these locomotives was transferred back to Rotterdam Junction and a mechanic and laborer employed there. The laborer was junior in rank to Ellers and should, according to the rules and practice at that place, have been displaced and Ellers given his position.

This was not done, though he made application to displace the laborer and be given this work. Constant refusal resulted. This work of servicing engines continued at Rotterdam Junction down to 1937, during all of which time the plaintiff was ready and willing and anxious to displace this junior employee and be given his work, as he was entitled under the rules and practices long obtaining in the mechanical department at Rotterdam Junction, but he never displaced the laborer and was never given the laborer's work.

The plaintiff made application for work elsewhere on the railroad but was informed that there was no place for him, but he was never informed at any time by anyone connected with the Railroad Company that he was discharged from the service of the Railroad Company, at least not until after he had made application for pension.

The Railroad Retirement Act was passed August 29, 1935 (Chapter 812), 45 U.S.C.A. §§ 215–228 note.

This work was going on at Rotterdam Junction and the plaintiff was always willing and anxious to displace the junior employee, namely the laborer, but was never permitted to do so, as above stated, during all of which time he never received any notice of discharge.

The plaintiff filed application for annuity in October, 1936, with the Claims Division of the Railroad Retirement Board. The Claims Division made certain investigations and denied the plaintiff's claim for pension on April 14, 1939. That decision went to the Appeals Council of the Railroad Retirement Board and that Council considered the matter and affirmed the previous decision of the Claims Division. This affirmance took place on April 17, 1940.

At and during this appeal the plaintiff offered the various affidavits of William Nolan and himself and certain letters from Railroad officials to the plaintiff, which clearly stated that he was not a discharged employee of the Railroad Company but was on furlough.

On May 15, 1940, the plaintiff appealed from the decision and determination of the Appeals Council to the Railroad Retirement Board itself and on November 18, 1941, the Board rendered a decision and served it upon the plaintiff, affirming the determination of the Appeals Council. Thereafter, and within one year, this suit was brought in the United States Court for this District.

From what has been said it is reasonably clear that the decision of the Retirement Board is not sustained by substantial evidence when that evidence consists of reported investigations by its own employees and letters from officers of the Railroad Company and forms filled out by the Railroad Company at the request of the Board. Such evidence can under no reasonable conception of law outweigh the evidence of the plaintiff and Nolan and the letters from the Company to the plaintiff by necessary inference recognized that he still had a furlough status with the railroad company.

If an administrative Board can go out and make some investigations by its employees and get letters from somebody and make a decision based thereon, flatly in contradiction to sworn affidavits and letters which directly or inferentially recognize his status as still having an employee relationship to the company, then there is no restriction upon the decision of such a

828

board and any incompetent hearsay evidence can outweigh sworn evidence directly to the contrary.

■ The Court is unable to support such a proposition and must hold that the decision of the Board was not supported by substantial evidence and that the overwhelming weight of the evidence was that the defendant had an employee status on furlough with the Railroad Company at the time he made his application for pension and was and is entitled to the pension.

There is support for this holding in the following cases: Matter of Carroll v. Knickerbocker Ice Company, 218 N.Y. 435, 440, 441, 113 N.E. 507, Ann.Cas.1918B, 540; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Columbian Enameling & Stamping Company, 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660; National Labor Relations Board v. Ford Motor Company, 6 Cir., 114 F.2d 905, certiorari denied 312 U.S. 689, 61 S.Ct. 621, 85 L.Ed. 1126; Martel Mills Corporation v. National Labor Relations Board, 4 Cir., 114 F.2d 624.

That leaves for consideration the alleged admission by plaintiff that he had no employee status with the Railroad Company after May 15, 1935. This is based upon statements made by the plaintiff in filling out a questionnaire on October 26, 1936, required by the Railroad Retirement Board. The form required no oath to be made thereto and no oath was made.

The plaintiff was an unlearned railroad man and filled out his form without the advice of counsel.

In answer to his questionnaire, he says: "It was not until Mr. Ayres (D. J. Ayres, Master Mechanic, at Greenfield, Mass.) wrote me on May 15, 1933 (Should be 1935) did I consider myself finished working for the railroad).

Master Mechanic Ayres wrote the plaintiff prior thereto and on October 13, 1934, in which he said: "According to the records of this office you entered the service of the mechanical department on July 1, 1920, and was laid off November 18, 1931, at which time we closed the Rotterdam engine house."

The letter the plaintiff referred to was the letter of Ayres of May 15, 1935 (not 1933) in which Ayres stated:

"I have the questionnaire which you completed and sent me, and in which you stated that you would like work as crossing tender, in engine house or on steam grab, or anything that could be offered you in Rotterdam.

"Have investigated as to possibility of your being given a position as crossing tender in vicinity of Rotterdam, and am advised that there is nothing that can be offered you in that line, as you could not displace the present tender, if you were given furlough.

"As you know, there is no steam grab at Rotterdam, and no work can be offered in engine house at that point."

From the foregoing, it is reasonably clear that the plaintiff believed from these letters of Ayres, that whatever his seniority rights under his furlough might be to the laborer's position in the roundhouse or to any other position in Rotterdam Junction, such rights would be flouted and the Railroad would give him no work.

■ It is also clear that when he stated in his answer to the questionnaire "it was not until * * * wrote me * * * did I consider myself finished with the Railroad Company." This conclusion was that of a layman and has no bearing whatever upon his legal rights. The fact is, as has been shown by undisputed affidavit, that there was at all times a junior employee at the Rotterdam Junction roundhouse who should have been displaced and the position given to plaintiff and the letter of Ayres can in no wise change plaintiff's legal rights.

It appears by the clearest and strongest evidence in the case, and not disputed, that he was on furlough from November 18, 1931 on and except for the 5½ months above set forth, there was work at Rotterdam Junction which he, by reason of seniority, should have been given. These are questions of law and his conclusions as given in the answers to the questionnaire are by no means an admission that he knew he had no legal rights by reason of the furlough of 1931 which continued to exist until he resigned. It only means that he did not expect to get any actual employment with the Railroad Company, whatever his legal rights. It cannot be held to be even in the slightest degree an admission that he knew that he had no rights under the furlough. His rights are a question of law and he was an ignorant layman. The letters of the plaintiff in the record were written without advice of counsel and go no

further, if they go as far, as the statement in the answers to the questionnaire. Indeed, in the letters by the plaintiff to the Board he makes this statement:

"Does your bureau desire me to file with the railroad my resignation and forward you a copy or do you understand the above is a virtual severance with the railroad as of May 15, 1935."

On September 20, 1937 he wrote to the foreman at Mechanicville: "Inasmuch as I am making an application to the Railroad Retirement Board for annuity I hereby resign from the service of the Boston & Maine Railroad, effective this date."

It is reasonably clear from all these things that all the plaintiff meant was that he knew he would get no actual employment from the Railroad Company regardless of his furlough rights and that such knowledge came to him upon receipt of Ayres' letter in May, 1935.

In view of the decision reached herein it is not necessary to pass upon the plaintiff's various motions to strike out various allegations in various passages of defendant's answer. It is not a case of where the defendant could present proof of facts upon trial to support such allegations. The record in this case is complete and this is a review of the record.

The conclusion is that the decision of the Board is not supported by substantial evidence within the meaning of the law and the decision is set aside and the Board is directed to grant an annuity to the plaintiff.

Judgment to this effect may be entered.