**B. W. JONES TRUST v. COMMISSIONER
OF INTERNAL REVENUE and four
other cases.**

Nos. 4999–5003.

Circuit Court of Appeals, Fourth Circuit.
Jan. 2, 1943.

Kenneth J. Mullane, of New York City (Ralph B. Plager, of New York City, on the brief), for petitioners.

L. W. Post, Sp. Asst. to the Atty. Gen., (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Edward H. Hammond, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before PARKER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

These are petitions to review a decision of the Board of Tax Appeals, now the Tax Court of the United States. There are five cases which were heard together before the Board and before this Court. The question involved is whether alien trusts are taxable upon capital gain derived from the sales of their securities within the United States under the Revenue Acts of 1936 and 1938, or whether they are exempt from such taxation because falling within the provision of section 211 of those acts. The Board held that the trusts were not within the provisions of section 211, because, while alien trusts, they were "resident" within the United States and maintained "an office or place of business" therein.

The trusts were created by an instrument executed in England in the year 1912 by a settlor who was a citizen and resident of England. Each trust was established in favor of an English beneficiary, and each was subject to a provision that income should be currently distributed to the beneficiary and capital gains added to corpus. The aggregate value of the securities forming the corpora of the trusts was approximately $3,000,000. During the tax years in question 90% of these were securities of corporations organized and doing business in the United States, and were kept in New York City. There were four trustees for each of the trusts and the same trustees served for all of them. From the beginning three of the trustees were citizens of England and one was a citizen of the United States. Since 1922 they have been A. Preston Jones, Cedric Neville Jones and Basil V. Priestley of England and David Barclay Nevius of New York City.

The trusts maintain an office in New York City which is leased in the name of Jones, Jones, Priestley and Nevius, and that name appears on the door of the office. The American securities, which as stated comprise 90% of the securities held by the trusts, are kept in a safety deposit box in a New York bank in the name of Jones, Jones, Priestley & Nevius. Bank accounts are carried in that name, and since 1926 the trustees have been operating under an agreement which authorizes any one of them to sign the name. A stenographer is employed in the New York office with respect to the activities of the trusts. Nevius and A. Preston Jones have control of the trust property. Jones has made semi-annual trips to the United States, at which times he and Nevius have gone over the securities and decided which should be sold and which held, and with respect to these matters Nevius has generally followed Jones' advice. The sales and purchases and the collection of income are in the hands of Nevius, however; and he receives a stipulated compensation for his services on a different basis from the other trustees. Upon receipt of dividends and interest he renders a statement to the English trustees and remits quarterly to an English bank the amount of dividends and interest received less expenses. Distribution of income is made in England by the English trustees.

When purchases of new securities are made, payment is effected by Nevius by check drawn on the trusts' bank account in a New York bank. Funds for the purchases are made available by sales of other securities from the trusts. In 1937 there were 17 such sales; in 1939 there were 14 at a gross sale price of $270,000. It is with capital gains arising from these transactions that the cases at bar are concerned.

Sec. 211(a) of the Revenue Act of 1936, 49 Stat. 1714, as amended by sec. 501 of the

Revenue Act of 1937, 26 U.S.C.A. Int.Rev. Acts, page 904, and sec. 211(a) of the Revenue Act of 1938, 52 Stat. 527, 26 U.S.C.A. Int.Rev.Acts, page 1093, contain the following provision: "There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States * * * a tax of 10 per centum of such amount * * *."

And sec. 211(b) of these Revenue Acts provides: "A nonresident alien individual engaged in trade or business in the United States or having an office or place of business therein shall be taxable without regard to the provisions of subsection (a)."

■ Sec. 161 of the Act, 52 Stat. 517, 26 U.S.C.A. Int.Rev.Acts, page 1080, provides that the taxes imposed "upon individuals", under the title relating to the income tax, "shall apply to the income of estates or of any kind of property held in trust". This means, of course, that the tax is imposed upon the income of the trust and that the trust is taxable under secs. 11 and 12 of the Revenue Act, 26 U.S.C.A. Int.Rev.Acts, page 1002, as contended by the Commissioner, unless it can bring itself within the provisions of sec. 211, i. e. unless it can show (1) that it is nonresident as well as alien, (2) that it is not engaged in trade or business within the United States, and (3) that it does not have an office or place of business in the United States.

■ Assuming, as did the Board, that the trusts have shown that they are not engaged in trade or business in the United States within the meaning of the statute (Cf. United States v. Pyne, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231; Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783), we agree with the Board that they have not shown nonresidence within the meaning of the statute and have not shown that they do not have an office or place of business in the United States within its meaning. What is nonresidence on the part of a trust, within the statutory meaning, is a question which in some instances may be difficult of determination; but we feel no hesitation in saying that it cannot be predicated of a trust 90% of whose property consists of stocks and bonds of domestic corporations, held in this country in the possession of a trustee who is a citizen of the country, traded in by that trustee on the exchange of the country, and returning income which is collected by such trustee in the country and handled from an office maintained in the country for that purpose. No individual who was present and operating within the country as were these trusts could claim to be a nonresident, and no corporation whose affairs were so handled could deny that it was present within the country on a permanent basis so as to subject it to service of process and other exercise of governmental power. With respect to the residence of alien individuals, Art. 211-2 of Regulations 94 and 101 states:

"An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned."

■ It is the manifest intention of Congress that alien trusts be subjected to the same rule as alien individuals, and such trust is subject to sec. 211 only under circumstances that would subject an individual to it. We agree with the Board that such circumstances are not shown by the evidence. As said by the Board:

"That there was an intention to keep the securities in this country is evident from the agreement of the trustees of March 9, 1926. That there was not even a 'floating intention' to take the securities out of the United States is apparent from the establishment and maintenance of an office under the title 'Jones, Jones, Priestley & Nevius.' The whole tenor of the March 9,

1926, agreement was that the trustees should maintain a permanent establishment in the United States under the control of a trustee. The intendment of the agreement was carried out throughout the years and during the taxable years we find the certificates physically located in this country, the maintenance of an office in the city of New York under the supervision of Nevius, and bank accounts in New York banks kept in the names of the trustees. All dividends and interest were paid to Nevius at the office of the trusts in New York and there the records and accounts of the American activities of the trusts were kept. Tax returns were made from the New York office and from there accountings were rendered to the English trustees. From time to time securities of the several trusts were purchased and sold through that office."

Unless the general principles applicable to residence in the case of alien individuals are applied in the case of alien trusts, the necessary conclusion is that sec. 211 has no reference to alien trusts at all; and such trusts would, in that event, unquestionably be taxable under sections 11 and 12. In any view of the matter, therefore, the decision of the Board is correct.

■ We agree, also, that the trusts may not invoke the right to be taxed under sec. 211 for the reason that they have an office and place of business within the country. It is clear from the statute that "having an office or place of business" is used in a different sense from "engaged in trade or business", since to bring an alien within the section both provisions must be negatived. Certainly, whether "engaged in trade or business" or not, a trust which maintains an office with a stenographer for handling all business connected with the trust is not in position to deny that it maintains an office within the country. Such an office is also a "place of business" at which the trust manages its affairs. The language of the statute is to be given its ordinary meaning; and, when this is done, the New York office of the trust was both an office and a place of business. A contrary conclusion would come as a shock to all men of ordinary common sense as well as to those specially versed in the meaning of our language. The case is clearly distinguishable from those where desk room is maintained for casual or incidental transactions. Cf. Lin-

en Thread Co. v. Commissioner, 2 Cir., 128 F.2d 166; Aktiebolaget Separator v. Commissioner, 2 Cir., 128 F.2d 739.

There was no error and the decisions of the Board in all the cases will be affirmed.

Affirmed.