**COMMISSIONER OF INTERNAL REVENUE v. SCOTTISH AMERICAN INV. CO., Limited.**

**SAME v. BRITISH ASSETS TRUST, Limited.**

**SAME v. SECOND BRITISH ASSETS TRUST, Limited.**

Nos. 8337, 8338, 8339.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 21, 1943.

Decided April 6, 1944.

A. F. Prescott, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Marion N. Fisher, of New York City (William H. Harrar, of New York City, on the brief), for respondent.

Before JONES, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These are companion cases and were argued together. The respondent companies are British corporations. The question is: Whether they were engaged in trade or business or had an office or place of business within the United States in the taxable years 1938 and 1939 so as to qualify within the meaning of Section 231(b) of the Revenue Act of 1938 and of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 231(b), as resident foreign corporations. The section reads:

"(b) Resident corporations.—A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable as provided in section 14(e) (1)."

Treasury Regulations 101, Article 231—1, with respect to the above section, is as follows:

"As used in section 231, section 119, section 143, section 144, and section 211, the phrase 'engaged in trade or business within the United States' includes the performance of personal services within the United States at any time within the taxable year. Such phrase does not include the effecting of transactions in the United States in stocks, securities, or commodities (including hedging transactions) through a resident broker, commission agent, or custodian.

"Whether a foreign corporation has an 'office or place of business' within the United States depends upon the facts in a par-

ticular case. The term 'office or place of business,' however, implies a place for the regular transaction of business and does not include a place where casual or incidental transactions might be, or are, effected."

The corresponding Revenue Act section and Treasury Regulations for 1939 are substantially the same.

The problem here presented is one of law, namely, whether on the facts these companies are entitled to be classified as resident foreign corporations under the Internal Revenue Code. See Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239.

The three corporations are of the same type and admittedly, investment trusts. The Board found each of them "is engaged in the business of investing the funds of its security holders for the primary purpose of deriving income from investment." The home offices of the companies are in Edinburgh, Scotland. Up to 1936, they had made no pretense of either doing business in, or having an office in, this country. All three of them had then and have now, heavy holdings in United States securities. Prior to 1936, Scottish had made profits in the sales of such securities here. The question of income taxes arose and that company engaged the accounting firm of Barrow, Wade, Guthrie & Company of New York City, to make an audit. Following the audit, Scottish paid taxes for the years 1927 to 1934 inclusive, in excess of a million dollars, plus interest of $220,000. Thereafter there were various discussions among the three companies as to the establishment of a United States office. On December 2, 1936, they appointed Walter A. Cooper, C.P.A., of New York, a partner in the above named accounting firm, as assistant secretary of all three companies. Cooper, acting for the companies, immediately obtained two rooms in the New York building where his accounting firm had offices, and on the next floor below. Each taxpayer had a separate lease for part of the two rooms. There was a telephone there which went through the accountants' switchboard. Cooper continued his partnership with the accounting firm. It is conceded that every partner of that concern who earned outside income was required by the partnership to turn over such income to the firm. Cooper left Barrow, Wade, Guthrie & Company on October 31, 1940. Shortly thereafter, he resigned as assistant secretary of the taxpayers. Employees of the accountants were active in the installation of a bookkeeping system, and making current records, in December 1936. From February 1938 through 1939 Henry A. Jeffers, an employee of Barrow, Wade, Guthrie and Company, supervised the activities of the office.

The office eventually was moved to New Jersey. There it consisted of one large room with a corner partitioned off as a private office. There were two telephones, one directly to the accounting firm and one outside line. The Tax Board found that the taxpayers established this United States office, in part at least, "to gain certain tax advantages." Eventually that office collected and deposited dividends on stocks owned by the companies in the United States, maintained full bookkeeping records re transactions in the United States, transmitted to the home offices in Scotland corporate data and information regarding developments in this country, including statistics from the Federal Reserve Bank and the New York Times, prepared income tax returns and paid local office expenses.

Prior to the opening of the office, the actual purchases and sales of the taxpayers' United States securities had been made by brokers and the custodian banks. The securities themselves had always been in the possession of J. P. Morgan & Co. and the National City Bank, for the taxpayers. These identical conditions continued after the opening of the office. The only part the office had to do with purchases and sales was the recording of such transactions after notification that they had been accomplished. Such transactions by the brokers and the banks do not constitute engaging "in trade or business within the United States" being specifically excluded by Section 211(b) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 211(b), which reads:

"Such phrase (engaged in trade or business within the United States) does not include the effecting of transactions in the United States in stocks, securities, or commodities through a resident broker, commission agent, or custodian."

The record clearly shows that the only real business of the corporations, namely, the investment business, consisting of the purchase and sale of securities with a view of disposing of unsatisfactory shares and reinvesting in others, was carried on in Edinburgh through the three boards of directors. They did everything of any importance in

connection with these concerns, and it was as a result of their efforts that the income of the companies was produced. The so-called United States office functioned solely on routine matters. Most of these services had formerly been performed for the taxpayers by the custodian banks. The detail was extensive, of necessity, for the companies had millions invested in this country. That, however, gives no sound basis for finding that the United States office was the place for the regular transaction of the investment business of the corporations. The policy, management, buying and selling, were dictated from abroad. The actual buying and selling and custody of the securities were, as always, handled by the brokers and custodian banks. With no real dispute as to the facts, the problem here resolves itself as to just what is meant by the language of [Treasury Regulation 101, Article 231(1)] defining such office or place of business as one implying "a place for the regular transaction of business and does not include a place where casual or incidental transactions might be or are effected." The Regulation, under almost identical facts, was passed upon in Linen Thread Co. v. Commissioner, 2 Cir., 128 F.2d 166, certiorari denied, 317 U.S. 673, 63 S.Ct. 79, 78 L.Ed. 541. In that case the agent of the foreign corporation received the dividends from the company's investments in the United States together with interest due from an American subsidiary; deposited the money so received in a New York bank; paid the rent and taxes; and remitted the balance to the foreign corporation at Glasgow. The agent also filed federal and state tax returns and looked after petitioner's investments and any changes in the general business or in products or material which would affect the company, which was a manufacturing concern. The agent had a room in an office building with the lease naming the company as tenant. There were never any official meetings of directors or officers of the concern at that office in New York City. The court held on page 169 of 128 F.2d:

"The findings show that the petitioner had neither an office nor a place of business in the United States which would come within the statutory provisions as explained by the regulations.

"We cannot, therefore, give effect to the regulations and at the same time subscribe to the petitioner's argument that there is such a statutory contrast between 'office' and 'place of business' as used in the phrase 'office or place of business' in § 231(b) of the 1938 Act that the maintenance of an office which was not used or kept for the transaction of the petitioner's ordinary business would entitle this foreign corporation to be taxed as a resident."

To the same effect, Aktiebolaget Separator v. Commissioner, 45 B.T.A. 243, affirmed per curiam, 2 Cir., 128 F.2d 739, certiorari denied, 317 U.S. 661, 63 S.Ct. 60, 87 L.Ed. 531.

In B. W. Jones Trust v. Commissioner, 4 Cir., 132 F.2d 914, the petitioners were a group of British trusts with approximately 90% of the funds being in American securities. There there were four trustees, one of whom was a citizen of the United States. The trusts maintained an office in New York City leased in the name of the four trustees; all American securities were kept in a safety deposit box in a New York bank in the name of the four trustees. The American trustee and one of the three British trustees had control of the trust property and the British trustee made semi-annual trips to the United States at which time he and his American colleague would go over the securities, decide which would be sold, which held, etc. The sales and purchases of the securities were in the hands of the American trustee. The court found that the trust maintained an office "for handling *all* (italics ours) business connected with the trust" and, therefore, that the trusts were not in a position to deny that they maintained an office within the United States.

Here we have an office set up by foreign corporations, in part at least, for the purpose of obtaining a favorable tax result. If the office were bona fide in the sense that it functioned truly on the one business of the taxpayers, this element would be of no consequence. Where, under the uncontradicted facts, the business of that office had only to do with the unimportant collateral detail, voluminous though such might be, we do not think that the taxpayers, directly running their own business from abroad, through brokers and custodian banks, are justified in their present contention. It seems to us that both the Linen Thread and the Jones Trust decisions strongly support this view.

The decisions of the Board of Tax Appeals are reversed.