**AIR INDIA, Plaintiff,**

v.

**PENNSYLVANIA WOVEN CARPET MILLS, INC. and Frank J. Pisano, Defendants.**

No. 97 Civ. 0675(LAK).

United States District Court, S.D. New York.

Sept. 23, 1997.

to recover for goods ordered and paid for but never delivered. The matter is before the Court on cross motions for summary judgment.

### Facts

On or about December 21, 1994, Air India placed purchase order number AI 2199 with Pennsylvania Woven Carpet Mills, Inc. ("PWCM") for 15,000 square meters of blue carpet. It paid invoices for the goods totaling $481,028.92. It claims never to have received the merchandise, and certainly there is no admissible evidence to the contrary. It brought this action against PWCM and its sole shareholder, president and chief executive officer. Frank J. Pisano, to recover the funds. PWCM is insolvent, and a default judgment has been entered against it, so Pisano is the sole remaining defendant.

While the parties do not agree as to all the facts, the broad outlines are essentially undisputed, at least in the sense that one side or the other has come forward with admissible evidence to support its contention and the other has no admissible evidence to the contrary.

The carpeting ordered by Air India in fact was produced for PWCM, arrived at its facility in Pennsylvania, was processed further, and was wrapped and weighed.[1] It appears never to have been shipped to, and in any case was not received by, Air India.[2]

Rohit Sabharwal, Sabharwal & Associates, New York City, for Plaintiff.

Paul A. Sandars, III, Kevin J. O'Connor, Lum, Danzis, Drasco, Positan & Kleinberg, LLC, New York City, for Defendant Frank J. Pisano.

### MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action by Air India against the principal of a now insolvent carpet supplier

Pisano assumes that the goods were in PWCM's facility at least as late as September 1, 1995.[3] PWCM, however, was in financial difficulty and under pressure from creditors at the time.[4] Finoco, one of PWCM's creditors, seized at least some of PWCM's assets at the end of September 1995.[5] In any case, in January or February 1996, PWCM's facility was shut down, and Pisano at that point lost any remaining control of

---

1. Pisano Dep. 47–48.

2. Pisano claims that Air India asked PWCM to hold the goods because Air India was not ready to take delivery. *Id.* at 81.

3. *Id.* at 53–54.

4. *See id.* at 54, 67–69.

5. *Id.* at 49, 54.

the facility and its contents.[6]

Finoco has submitted an affidavit denying that it seized or received any of the Air India goods.[7] But the very same affidavit acknowledges that 6,000 square meters of the Air India goods are presently located in the former PWCM facility and goes on to say that "Finoco, Inc. will permit Air–India to take possession of the aforementioned carpets ..."[8] Thus, Finoco concededly controls the facility and its contents. Its affidavit denies only that Finoco now claims an interest in the Air India goods that remain on the premises.

What then happened to the other 9,000 square meters of carpeting? Pisano says he does not know and points to the fact that he was not in control of the facility after the beginning of 1996.[9] Although he believes that the carpeting was in the facility when Finoco took over, his belief is simply a deduction from the fact that the goods were produced and his lack of any reason to suppose that they went anywhere else. Nevertheless, Pisano admits that the carpeting might not have been on the premises when Finoco entered.[10]

### The Complaint and the Motions

The complaint contains two counts against Pisano, one for conversion and the other for fraud. The former charges in conclusory terms that "PWCM and/or Pisano wrongfully and unlawfully took the" Air India goods "and converted the same to their own use ..."[11] The latter asserts that PWCM and Pisano represented to Air India that the goods would be shipped upon payment of PWCM's invoices, that these statements were known to be false when made, and that Air India relied upon them to its detriment.[12]

In moving for summary judgment, Air India has ignored its fraud claim and seeks recovery against Pisano for conversion on the theory that the absence of the goods from PWCM's former facility can be attributable only to Pisano having sold or delivered them to third parties. In addition it asserts two new claims which do not appear in the complaint, i.e., that Pisano is liable to Air India (1) under New York Business Corporation Law Section 720[13] for negligence in his capacity as the sole director and president of PWCM, and (2) because the corporate veil should be pierced to impose liability for PWCM's obligation on Pisano.

Pisano cross-moves for summary judgment. He contends that the Business Corporation Law provision relied upon by Air India is inapplicable because PWCM is a Pennsylvania corporation, that there is no evidence of conversion or fraud, and that there is no basis for piercing the corporate veil.

### Discussion

There are two preliminary matters that warrant mention before proceeding to the merits of the motions.

First, both parties have ignored the fact that former S.D.N.Y. Civ.R. 3(g) was replaced by Rule 56.1 months ago and have failed to comply with the new rule. Indeed, they have not even complied with former Rule 3(g). Pisano's Rule 3(g) statement is largely unresponsive to Air India's, and Air India did not file a Rule 3(g) statement in opposition to Pisano's cross motion.

Second, Air India purportedly has moved for summary judgment on two claims that have not been alleged in the complaint, the Section 720 and veil piercing claims. As no motion for leave to amend was filed and the time fixed by the scheduling order for amendment of the pleadings has expired, these contentions are not properly before the Court.

Each side nevertheless has proceeded without objecting to the other's errors and, in Pisano's case, without objecting to Air India's

---

6. *Id.* at 54.

7. Galesi Aff. ¶ 5.

8. *Id.* ¶¶ 3–4.

9. Pisano Dep. 54.

10. *Id.* at 59–60.

11. Cpt. ¶ 15.

12. *Id.* ¶¶ 22–25.

13. N.Y.Bus.Corp L. § 720 (McKinney Supp.1997).

*de facto* amendment of the complaint. In the interest of disposing of the matter as promptly as possible, the Court will do likewise. In future, however, this Court will strictly enforce the provisions of Rule 56.1.

### Air India's Motion

#### The Directorial Negligence Claim

■ Section 720 of the New York Business Corporation Law permits judgment creditors of a "corporation" to bring actions against officers and directors for, *inter alia,* negligence in the management and disposition of corporate assets committed to their charge. Section 102(a)(4) defines "corporation," insofar as is relevant here, as "a corporation for profit formed under this chapter ..."[14]—in other words, a New York corporation. While Section 1317 broadens the ambit of Section 720, it subjects to that provision only "directors and officers of a foreign corporation doing business in this state ..."[15] There is no evidence sufficient to warrant an inference that PWCM is or was doing business in New York, much less that Air India has made a showing sufficient to warrant summary judgment in its favor on the point.[16]

Air India's fall back position is that Pisano is liable under Pennsylvania law, contending that directors of a Pennsylvania corporation may be sued by creditors for negligence in their capacities as directors. It certainly is not entitled to summary judgment on that theory.

As a general matter, the right of action for breach of a director's duty with respect to the management of a corporation belongs to the corporation. Absent a statute such as Section 720 of the New York Business Corporation Law, individual creditors therefore ordinarily cannot sue directors for misman-

agement.[17] While Air India claims that the Pennsylvania rule is different,[18] there is no need to determine the issue on this motion. Even if the law is as Air India claims, its motion must be denied unless it has established as a matter of law that Pisano was negligent under the appropriate standard and that his negligence caused Air India's alleged loss. It has not done so.

#### Conversion

■ Air India's conversion claim warrants little discussion. Pisano manifestly did not convert 6,000 square meters of the goods in question because undisputed evidence establishes that it still is in the former PWCM facility in Philadelphia, and Finoco has undertaken to release it to Air India. Nor is there a shred of evidence that Pisano converted any of the other 9,000 square meters. While its present whereabouts, as far as the record discloses, are unknown, there is no evidence that Pisano ever exercised dominion or control over it.

#### Veil Piercing

■ Air India's contention is that Pisano—who was the sole stockholder, sole director, president and chief executive officer of PWCM—dominated and controlled PWCM and used that power to convert the Air India carpeting to his own use.[19] While Pisano's positions are strong evidence of domination and control, it is debatable whether his positions alone establish domination and control sufficiently for summary judgment purposes without evidence that he actually used those positions to make PWCM act "robot-or puppet-like in mechanical response to the controller's tugs on its strings

---

**14.** N.Y.Bus Corp.L. § 102(a)(4) (McKinney 1986).

**15.** N.Y.Bus.Corp.L. § 1317 (McKinney 1986).

**16.** Indeed, Air India asserts only that PWCM has "transacted business" in New York (Pl.Mem.5), ignoring the fundamental difference between the level of contact with the state described by that term and the far more significant presence described by the term "doing business." *See, e.g., Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 954 (2d Cir.1967); *A.C.K. Sports, Inc. v. Doug Wilson Enterprises,* 661 F.Supp. 386, 390 (S.D.N.Y.1987); *Bulova Watch Co. v. K. Hat-*

*tori & Co.,* 508 F.Supp. 1322, 1345 (E.D.N.Y. 1981) ("doing business is to transacting business what a full length mink coat is to tennis shorts.").

**17.** Henry Winthrop Ballentine, Ballentine on Corporations § 72a, at 186 (1946).

**18.** It relies on *Fell v. Pitts,* 263 Pa. 314, 106 A. 574 (1919). *See also Cochran v. Shetler,* 286 Pa. 226, 133 A. 232 (1926).

**19.** Pl. Mem. 9.

or pressure on its buttons," as Pennsylvania law seems to require.[20] More basically, however, the lack of proof of any conversion by Pisano that requires denial of summary judgment on that claim requires similar treatment of this.

### Pisano's Cross Motion

#### The Directorial Negligence Claim

■ Pisano's only response to Air India's contention that it is entitled to recover on the theory that he was negligent in his capacity as a director—essentially by failing to take appropriate steps to keep track of and safeguard the goods—is the argument that Section 720 of the New York Business Corporation Law does not apply to him.[21] As indicated above, the statute applies only to foreign corporations doing business in New York. Air India has failed to make out a *prima facie* case that PWCM is or was doing business in this state. As that is an issue on which Air India would have the burden of proof at trial, and as the time for discovery has expired, Pisano is entitled to summary judgment dismissing the claim under that statute.[22] Pisano, however, has failed to respond to Air India's contention that Pisano is liable to it for negligence under Pennsylvania law.

This aspect of the claim presents a closer question. Given Air India's unrefuted denial of receipt, there are only two possibilities as to how the goods were lost. Either they were taken by someone not entitled to them or they were lost in shipment. If they were lost in shipment, it is impossible to see how Pisano could be liable, whether for negligence or on any other theory. If they were taken while the facility still was under PWCM's control, the disappearance may or

may not have been the product of a failure by Pisano to exercise the requisite degree care in safeguarding the property. If they disappeared after Finoco took over, it would be hard to see how the disappearance could have been a product of negligence by Pisano. So the first question is whether there is any evidence to suggest that the goods disappeared while under PWCM's control, a subsidiary issue on which Air India would bear the burden of persuasion at trial.

On the one hand, we have the Finoco affidavit denying that it seized or received any of the Air India goods. As noted, however, the affidavit in the same breath acknowledges that Finoco still has control of 6,000 square meters of Air India's carpeting. The Finoco affidavit therefore does not negate the possibility that the goods were in the facility when Finoco took over.

On the other hand, Pisano's testimony falls short of establishing that the missing 9,000 square meters actually did pass into Finoco's hands. While he believes that it did, he gave the following testimony:

"Q Let me ask it this way. Do you know that it was there or are we just guessing?

"A I don't know if it was there. I don't know if it wasn't there." [23]

This inability to say that the missing carpeting actually was seized by Finoco, taken together with the Finoco affidavit, is troublesome to Pisano's position. While the contradiction in the Finoco affidavit gives pause, a trier of fact could construe Finoco's evidence as meaning that the only Air India goods that came into Finoco's hands were the 6,000 square meters it still possesses. That denial, taken together with Pisano's imprecision, perhaps would permit a reasonable trier of

**20.** *Ragan v. Tri–County Excavating, Inc.*, 62 F.3d 501, 508 (3d Cir.1995) (quoting *Culbreth v. Amosa (Pty) Ltd.*, 898 F.2d 13, 15 (3d Cir.1990) (internal quotation marks omitted)).

**21.** Def.Mem. 7–10.

**22.** *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993) (when non-moving party bears burden of proof at trial, moving party is entitled to summary judgment if non-movant fails to make showing on essential element of its claim): *Celotex Corp. v. Catrett*, 477

U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (summary judgment appropriate where party having burden of proof at trial, after adequate time for discovery, fails to make showing sufficient to establish essential element of its claim); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (no issue for trial unless non-moving party adduces sufficient evidence to warrant jury finding in its favor).

**23.** Pisano Dep. 60.

fact to find that it is more probable than not that the goods disappeared while PWCM was in control.

The next question is whether a reasonable trier could find that the disappearance was a product of Pisano's negligence, also an issue on which Air India would bear the burden of persuasion at trial. And it is here that Air India's case founders.

We know absolutely nothing about the circumstances in which the goods disappeared, even assuming they disappeared on Pisano's watch. Perhaps, as Air India suggests, they were converted by Pisano. Perhaps someone else stole them. Perhaps they were shipped and either lost or misdelivered by the carrier. But there is nothing in this record that makes any of these alternatives, or perhaps others that more fertile minds might imagine, more probable than any other. Nor do we know anything about the conditions in which the goods were kept while at PWCM. For example, there is no evidence as to the nature of the facility in which the goods were kept and whether it was secure or easily pilfered. Hence, if the goods were stolen, there is nothing on which to base a conclusion as to whether the theft was attributable to a failure by Pisano to exercise the requisite level of care.

There are only two circumstances that even arguably suggest that a verdict for Air India, were the case tried, could rest on anything but a random guess: Pisano's inability to say whether PWCM still had the goods when Finoco came in and the fact that he could have profited by selling the goods to someone else. On reflection, however, these are not enough, either alone or in combination, to warrant a trial. While Pisano could have profited by stealing and reselling the goods, so too could any thief. And his lack of

knowledge of the state of PWCM's inventory late in 1995 or early in 1996 is probative, perhaps, of negligence with respect to accounting systems but not of negligence with respect to physical safeguarding of the goods. In short, Air India has provided mere conjecture, rather than proof, and Pennsylvania law does not permit a jury to find negligence based on such speculation.[24] Thus, Pisano is entitled to summary judgment dismissing the negligence claim.[25]

*Conversion*

There is no evidence whatever that Pisano converted the goods. As Air India would bear the burden of persuasion on this issue at trial, Pisano is entitled to summary judgment dismissing the claim.[26] "Unsupported suspicions" are insufficient to warrant a different result.[27]

*Fraud*

The complaint alleges that Pisano falsely represented to Air India that the carpeting would be shipped upon payment of the PWCM invoices.[28] It was verified by M.L. Thatte, an officer of Air India.[29] Mr. Thatte testified at his deposition, however, that he never spoke to Pisano, that he had no knowledge of any conversations between Pisano and anyone else at Air India, and that no one at Air India ever even told Thatte that he or she ever had spoken to Pisano.[30] In consequence, there is no evidence of any representations, true or false. Nor has Air India resisted dismissal of the fraud claim. Accordingly, Pisano is entitled to summary judgment dismissing the fraud claim. The interposition of that claim was manifestly irresponsible.

*Veil Piercing*

As the Court has held that the conversion and fraud claims must be dismissed, the

---

24. *Galullo v. Federal Express Corp.*, 937 F.Supp. 392, 398–99 (E.D.Pa.1996); *Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles*, 423 Pa. 396, 223 A.2d 742, 745 (1966); *Cuthbert v. City of Philadelphia*, 417 Pa. 610, 209 A.2d 261, 264 (1965); *Houston v. Republican Athletic Assoc.*, 343 Pa. 218, 22 A.2d 715, 716 (1941).

25. *Fedorczyk v. Caribbean Cruise Lines*, 82 F.3d 69, 75–76 (3d Cir.1996); *Galullo*, 937 F.Supp. at 399.

26. *Nebraska*, 507 U.S. at 590, 113 S.Ct. at 1694; *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at

2552–53; *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

27. *Griffin v. Griffin*, 327 U.S. 220, 236, 66 S.Ct. 556, 564, 90 L.Ed. 635 (1946).

28. Cpt. ¶ 22.

29. *Id.* at 8.

30. Thatte Dep. 94–97.

question whether Pisano is entitled to dismissal also of the veil piercing claim depends upon whether evidence of shareholder domination and control, without proof of fraud or wrongdoing, suffices to pierce under Pennsylvania law,[31] which governs here because PWCM is a Pennsylvania corporation.[32]

The Pennsylvania Supreme Court has held that the corporate form "will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime."[33] While there is no definitive test,[34] at least one Pennsylvania appellate court has held that the corporate form "will be disregarded only when it is abused to permit perpetration of a fraud or other illegality."[35] Absent sufficient indications to the contrary, this Court accepts the view of an intermediate Pennsylvania appellate court as predictive of the view of the Pennsylvania Supreme Court on the issue.[36]

As there is no evidence of any culpable wrongdoing by Pisano, his alleged domination and control of PWCM is insufficient to warrant piercing the corporate veil.

### Conclusion

For the foregoing reasons, Air India's motion for summary judgment is denied. Pisano's cross-motion for summary judgment dismissing the complaint is granted.

SO ORDERED.

**31.** *Compare Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1052–53 (2d Cir.1997) (domination and control absent fraud or unjust conduct insufficient under New York law); *Morris v. New York State Dept. of Taxation and Finance,* 82 N.Y.2d 135, 141–42, 603 N.Y.S.2d 807, 811, 623 N.E.2d 1157 (1993) (same).

**32.** *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995) *Kalb, Voorhis & Co. v. American Fin. Corp.,* 8 F.3d 130, 132 (2d Cir.1993); *Sonnenblick–Goldman Co. v. ITT Corp.,* 912 F.Supp. 85, 88–89 (S.D.N.Y.1996).

**33.** *Sams v. Redevelopment Auth.,* 431 Pa. 240, 244 A.2d 779, 781 (1968); *accord, First Realvest,* *Inc. v. Avery Builders, Inc.,* 410 Pa.Super. 572, 577, 600 A.2d 601, 604 (1991); *Burton v. Boland,* 339 Pa.Super. 444, 448, 489 A.2d 243, 245–46 (1985); *Kellytown Co. v. Williams,* 284 Pa.Super. 613, 622, 426 A.2d 663, 668 (1981).

**34.** *E.g., First Realvest, Inc.,* 410 Pa.Super. at 578, 600 A.2d at 604.

**35.** *Kellytown Co.,* 284 Pa.Super. at 623, 426 A.2d at 668.

**36.** *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *O'Neill v. City of Auburn,* 23 F.3d 685, 690 (2d Cir.1994).