OPINION OF THE COURT
Helen E. Freedman, J.
In connection with a hostile takeover bid by AirTran Holdings, Inc. (AirTran), its subsidiary AirTran New York, LLC (Air-Tran NY), seeks to compel defendant Midwest Air Group, Inc. (MAG) to produce its current record of shareholders pursuant to-Business Corporation Law § 1315. AirTran intends to communicate with MAG shareholders directly in order to convince them to sell AirTran their shares. Business Corporation Law § 1315 (a) provides: “Any resident of this state who shall have been a shareholder of record of a foreign corporation doing business in this state upon at least five days’ written demand may require such foreign corporation to produce a record of its shareholders.” MAG, a Wisconsin corporation, opposes the motion on the ground that Business Corporation Law § 1315 does not apply to it because MAG is not “doing business” in New York under article 13 of the Business Corporation Law.
MAG does not contest personal jurisdiction, nor the propriety of AirTran NY’s request for the records. The sole issue before this court is whether MAG is “doing business in this state” under Business Corporation Law § 1315. While AirTran NY avers that the “doing business” standard under Business Corporation Law § 1315 is identical to the long-arm jurisdictional standard under CPLR 302, MAG argues that Business Corporation Law § 1315 mandates applying the stricter stan- . dard for doing business that has been applied to other article 13 sections.
Parties:
AirTran NY is a wholly-owned subsidiary of AirTran Holdings, Inc., a Nevada corporation. All of AirTran Holdings, Inc.’s operations are conducted through its other wholly-owned subsidiary, AirTran Airways, Inc. AirTran NY was formed in January 2007 in connection with its proposed merger in order to invoke Business Corporation Law § 1315. Galena Acquisition Corp., a Delaware corporation and also an AirTran Holdings, Inc. wholly-owned subsidiary, was formed to be the vehicle to acquire MAG.
*469 Midwest Air Group, Inc. is organized under the laws of Wisconsin and has a principal place of business in Oak Creek, Wisconsin. Midwest Airlines, Inc., MAG’s wholly-owned and principal subsidiary, is a commercial air carrier providing scheduled passenger service to destinations in the United States. Midwest Airlines is also principally a Wisconsin corporation, but it is registered to do business in New York State, pays taxes to New York, maintains an office in New York, and it owns slots at the John F. Kennedy and LaGuardia airports.
Background:
On October 20, 2006, AirTran Holdings, Inc. approached MAG’s board of directors with a private offer to purchase the company for $11.25 per share. MAG’s board refused the offer on December 7, 2006. On January 9, 2007, AirTran New York, LLC registered with the New York State Department of State, Division of Corporations. On January 11, 2007, in its attempt to purchase shares directly from MAG’s shareholders for $13.25 per share, AirTran announced a tender offer for MAG’s outstanding shares, and submitted a form S-4 to the Securities and Exchange Commission (SEC) explaining the offer. The SEC form S-4 stated that AirTran intends “to acquire control, and ultimately the entire interest in” MAG through a two-step process. First, AirTran seeks to exchange cash and shares of Air-Tran common stock for outstanding MAG shares. Second, it seeks to merge with and into Galena or another wholly-owned subsidiary of AirTran and to convert remaining MAG shares into the “right to receive the same number of shares of AirTran common stock and the same amount of cash per Midwest Share as paid in the offer.”
On January 12, 2007, AirTran NY purchased 100 shares of MAG. In a letter dated January 16, 2007, AirTran NY requested that MAG produce the following shareholder lists pursuant to Business Corporation Law § 1315: (1) Non-Objecting Beneficial Owner lists (NOBO lists), which contain the names of individuals and entities owning beneficial interests in shares of the corporation who have given consent to the disclosure of their identities; (2) “CEDE lists” or the lists identifying the brokerage firms and other record owners who bought shares in a street name for their customers and who have placed those shares in the custody of depository firms such as Depository Trust Co; (3) lists of participants in any company stock plan where the participants have the right to vote their shares; and (4) the three aforementioned lists to the extent they apply to holders of *470 MAG’s 2008 6.75% Convertible Senior Secured Notes. AirTran NY’s letter directed MAG to produce the shareholder records at the office of its transfer agent, American Stock Transfer & Trust Company, located at 59 Maiden Lane, New York, New York, or at an office in New York county that MAG designates as an office where it does business.
MAG refused to produce the shareholder records,[1] contending that MAG does not “do business” in New York within the meaning of Business Corporation Law § 1315. MAG’s refusal letter cited Mayatextil, S.A. v Liztex U.S.A., Inc. (1993 WL 51094, 1993 US Dist LEXIS 1959 [SD NY, Feb. 24, 1993]) and Storwal Intl., Inc. v Thom Rock Realty Co., L.P (784 F Supp 1141 [SD NY 1992]) for the proposition that it is not doing business in New York under article 13.
MAG forwarded AirTran’s initial October 2006 offer to its “record holders” in compliance with SEC rule 14d-5 (a) (4) (17 CFR 240.14d-5 [a] [4]). AirTran NY now seeks MAG’s shareholder records so that AirTran Holdings, Inc. may communicate directly with those shareholders to inform them of the new offer. Under Wisconsin law, a shareholder may only obtain shareholder records if the requesting shareholder owns five percent of the shares or has been a shareholder for at least six months before making the demand. (Wis Stat Ann § 180.1602.) New York law imposed a similar five percent ownership or six month waiting period requirement until 1997 when it amended the Business Corporation Law to remove any prerequisites for obtaining shareholder records.
On January 23, 2007, AirTran NY filed this action and moved to compel production of the lists pursuant to Business Corporation Law § 1315 (c), which provides that upon a foreign corporation’s refusal to produce its records, the requesting shareholder “may apply to the supreme court in the judicial district where the office of the foreign corporation within this state is located . . . for an order directing the foreign corporation” to produce the records.
Contentions:
The issue here is how to interpret “doing business” under the shareholder inspection statute.
*471 i. AirTran
AirTran NY argues that the CPLR 302 standard for “doing business” should apply to Business Corporation Law § 1315 because the right to inspect shareholder records should be liberally construed. Additionally, it argues that the constitutional concerns underlying the reasons for requiring a stricter standard for “doing business” under other provisions of article 13 of the Business Corporation Law do not apply to Business Corporation Law § 1315. Relying on MAG’s SEC form 10-K, AirTran NY argues that MAG is directly doing business in New York, and it is doing business through its principal subsidiary Midwest Airlines. Specifically, AirTran NY alleges that MAG’s direct New York contacts include:
• slots at LaGuardia and Kennedy airports have been pledged as security to holders of the company’s convertible senior secured notes
• the company identifies such slots as previously “unencumbered” assets of the company
• the company has added capacity in Milwaukee routes to Boston, Kansas City, and New York
• the company maintains a reservation center in Wisconsin that “generates revenue through the sale of new reservations” from New York customers
• the FAA’s regulation of the company’s aircraft maintenance and operations including flight operations, where a portion of the flight operations occurs in New York.
ii. MAG
MAG avers “doing business” has the same meaning throughout article 13. Accordingly, it contends it is not “doing business” in New York because AirTran NY cannot show that it engages in the “permanent, continuous, and regular” activities required for doing business under Business Corporation Law § 1312. (Storwal Intl., Inc. v Thom Rock Realty Co., L.P., 784 F Supp 1141 [SD NY 1992].) Business Corporation Law § 1312 (a) states that “[a] foreign corporation doing business in this state without authority shall not maintain any action” in New York. MAG avers that the actions of its subsidiary Midwest Airlines, which is registered to do business in New York, may not be imputed to it for purposes of article 13. MAG argues that Air-Tran NY misconstrues and misrepresents statements in the *472 SEC form 10-K, which states that its subsidiary Midwest Airlines, rather than MAG, owns and operates aircraft in New York, holds slots at New York airports, and operates a New York reservation center.
Analysis:
The right to inspect shareholder records derives from the “shareholder’s beneficial ownership of corporate assets and the concomitant right to protect his investment.” (Matter of Crane Co. v Anaconda Co., 39 NY2d 14, 18 [1976].) At common law, a shareholder had the right to inspect records where the shareholder acted in good faith and established that inspection was for a proper purpose. (Id.)
Historically, the shareholder inspection statute only applied to domestic corporations insofar as it was not the intention of the statute to “regulate the internal affairs of foreign corporations.” (Matter of Rappleye, 43 App Div 84, 86 [1st Dept 1899].) However, Matter of Alfred Kohlberg, Inc. v American Council of Inst. of Pac. Relations, Inc. (270 App Div 520 [1st Dept 1946]), which involved a foreign corporation that maintained its corporate records at its main office in New York, extended the shareholder inspection statute to foreign corporations licensed to do business in New York on the ground that a foreign corporation that accepts a license to do business in New York or that submits to New York’s jurisdiction “may be treated as a domestic corporation to the extent of rendering it subject to the writ of mandamus [directing production of shareholder records].” (Id. at 521.) Under the current statutory scheme, shareholders of foreign corporations “doing business in this state” have the same right to inspect books and records under Business Corporation Law § 1315 as shareholders of domestic corporations under Business Corporation Law § 624.
The relevant portion of Business Corporation Law § 1315 (a), which applies the shareholder inspection statute to “a foreign corporation doing business in this state,” is quoted above. Business Corporation Law § 1315 (b) provides that a foreign corporation doing business in New York may deny the shareholder’s demand
“upon his refusal to furnish ... an affidavit that such inspection is not desired for a purpose which is in the interest of a business or object other than the business of the foreign corporation and that such shareholder . . . has not within five years sold or offered for sale any list of shareholders.”
*473 Although the meaning of “doing business” under Business Corporation Law § 1315 has not been directly addressed, Hovey v De Long Hook & Eye Co. (211 NY 420 [1914]) interpreted the phrase “transaction of business in this state,” under Business Corporation Law § 1315’s predecessor statute, Stock Corporation Law § 33, consistent with cases that interpret statutes regulating and taxing foreign corporations. Stock Corporation Law § 33 provided:
“Every foreign stock corporation having an office for the transaction of business in this state . . . shall keep therein a book to be known as a stock book . . . Such stock book shall be open daily, during business hours, for the inspection of its stockholders and judgment creditors, and any officer of the state authorized by law to investigate the affairs of any such corporation.”
The Hovey court held that the “transaction of business” must be interpreted in the context of the “entire system for the supervision, regulation and taxation of foreign corporations in some measure conducting business in this state” because the language should be “construed harmoniously with that employed in other statutes which are part of this system.” (211 NY at 424.) The foreign corporation, the De Long Hook and Eye Company, sold goods in New York through traveling salesmen who met with New York customers at an office defendant rented in New York City. The Hovey court held that the defendant was not subject to New York’s inspection statute because defendant’s limited acts in New York did not satisfy the standard for the “transaction of business” under the system of statutes regulating and supervising foreign corporations. (Id. at 424-425.)
When considering the language of the current shareholder inspection statute, an examination of Business Corporation Law §§ 1301[2] and 1312[3] is instructive. Those statutes involve the authorization of a foreign corporation to do business and the right *474 of a foreign corporation authorized to do business to maintain an action in New York, respectively. Business Corporation Law §§ 1301 and 1312 require a higher level of “doing business” than the general jurisdiction statute CPLR 301, which in turn requires a greater degree of New York activity than does CPLR 302. Business Corporation Law §§ 1301 and 1312 apply a heightened standard in order to avoid infringing on the Interstate Commerce Clause, which grants Congress the power to regulate commerce among the states.[4] (See Storwal Intl., Inc. v Thom Rock Realty Co., L.P., 784 F Supp 1141 [SD NY 1992]; Tanza v Susquehanna Coal Co., 220 NY 259 [1917].) By implication, the Commerce Clause prohibits states from taking certain actions regulating interstate commerce “even absent congressional action.” (CTS Corp. v Dynamics Corp. of America, 481 US 69, 87 [1987].) This implied restriction on state regulation of interstate commerce is known as the dormant Commerce Clause. Thus, it has been held that the foreign corporation must engage in a high level of intrastate business activity to trigger Business Corporation Law § 1312. (See Storwal Intl., Inc. v Thom Rock Realty Co., L.P., 784 F Supp 1141 [SD NY 1992].)[5]
Business Corporation Law § 1301 (a) provides that “[a] foreign corporation shall not do business in this state until it has been authorized to do so as provided in this article,” and Business Corporation Law § 1301 (b) lists four activities that shall not be considered “doing business in this state.” These activities include (1) maintaining or defending any action or proceeding, (2) holding meetings of its directors or its shareholders, (3) maintaining bank accounts, and (4) maintaining offices or agencies only for the transfer, exchange and registration of its securities, or appointing and maintaining trustees or depositaries with relation to its securities.
Under Business Corporation Law § 1312, a foreign corporation “doing business” without authority shall not maintain an action in New York unless and until it has been authorized to do so. To constitute “doing business” under Business Corporation Law § 1312, the foreign corporation must do more than *475 “make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose.” (International Fuel & Iron Corp. v Donner Steel Co., 242 NY 224, 230 [1926].) The party relying on Business Corporation Law § 1312 bears the burden of establishing that “the corporation’s business activities in New York were not just casual or occasional, but so systematic and regular as to manifest continuity of activity in the jurisdiction.” (Alicanto, S. A. v Woolverton, 129 AD2d 601, 602 [2d Dept 1987] [internal quotation marks omitted].) Evidence that the corporation has localized some portion of its business activity in New York is required. (Netherlands Shipmortgage Corp., Ltd. v Madias, 717 F2d 731, 739 [2d Cir 1983].) There is a presumption that the foreign corporation is doing business in the state of incorporation rather than in New York. (Alicanto, S. A. v Woolverton, 129 AD2d 601 [2d Dept 1987].)
Conclusion:
A stricter standard for doing business under article 13 provisions is required to avoid imposing burdens upon foreign corporations that are not licensed to do business in New York and that maintain only limited contacts here. Business Corporation Law § 1315 should be construed consistent with other provisions of the Business Corporation Law that regulate foreign corporations doing business in New York. (See 3-13 White, New York Business Entities § B1315.02 [2005]; Hovey v De Long Hook & Eye Co., 211 NY 420 [1914].) Moreover, the preference for construing statutory phrases consistently favors interpreting Business Corporation Law § 1315 in harmony with Business Corporation Law §§ 1301 and 1312. (See Schneider v Feinberg, 345 F3d 135, 146 [2d Cir 2003] [interpreting the term “compensation” in the context of the September 11th Victim Compensation Fund of 2001, title IV of the Air Transportation Safety and System Stabilization Act of 2001 (Pub L 107-42, 115 US Stat 237 [2001]), consistent with the language in and history of that act rather than applying the “make whole” standard used in other tort law contexts].)
Unlike other article 13 provisions, Business Corporation Law § 1314, a forum non conveniens provision, does not implicate the Due Process or Interstate Commerce clauses of the United States Constitution. (See Simonson v International Bank, 16 AD2d 55, 56 [1st Dept 1962] [discussing Business Corporation Law § 1314’s predecessor statutes, General Corporation Law §§ 224 and 225, “which are in effect venue statutes”]; see Sie *476 gel, NY Prac § 83 [3d ed] [“Comparing Corporate ‘Doing Business’ Tests”].) Thus, interpreting “doing business” under Business Corporation Law § 1314 as akin to CPLR 301, as the Court did in ABKCO Indus. v Lennon (52 AD2d 435 [1st Dept 1976]), has no bearing on how to analyze Business Corporation Law § 1315.
It is not the constitutionality of Business Corporation Law § 1315 per se that is in dispute, but rather the level of conduct that is at issue. The cases cited by AirTran NY are inapposite because in those cases, there was no dispute about the foreign corporation’s level of conduct in New York. In Sadler v NCR Corp. (928 F2d 48 [2d Cir 1991]), the foreign corporation maintained at least eight offices in New York and conducted substantial business there. Here, AirTran NY alleges that MAG’s direct contacts with New York include receipt of revenue from New York customers and pledging property located in New York as security. Receipt of revenue from New York sales alone is insufficient. (Netherlands Shipmortgage Corp., Ltd. v Madias, 717 F2d 731, 739 [2d Cir 1983].) Business Corporation Law § 1315 (c), which requires the requesting shareholder to apply for an order in the “supreme court in the judicial district where the office of the foreign corporation within this state is located,” suggests that, at a minimum, the foreign corporation must have an office in New York before an order may be issued against it. There is no indication that MAG does any business in a New York office. While MAG’s alleged New York contacts may be sufficient to obtain long-arm jurisdiction, they do not rise to the level of “doing business in this state” under article 13. (See Alicanto, S. A. v Woolverton, 129 AD2d 601, 603 [2d Dept 1987] [holding that maintaining an office and two bank accounts and negotiating four transactions in New York over a seven-year period was not so “regular and systematic” as to invoke Business Corporation Law § 1312].)
The actions of MAG’s subsidiary, Midwest Airlines, do not subject it to Business Corporation Law § 1315. (See Mayatextil, S.A. v Liztex U.S.A., Inc., 1993 WL 51094, 1993 US Dist LEXIS 1959 [SD NY, Feb. 24, 1993].) MAG is not obligated to pay taxes and registration fees and be subject to New York regulation solely because its subsidiary Midwest Airlines is registered to do business in New York. (Id.)
AirTran NY’s contention that MAG should not be entitled to “insulate itself” from Business Corporation Law § 1315 by incorporating a subsidiary and placing all New York operations *477 under that subsidiary’s control is not persuasive, particularly where AirTran NY incorporated here for the sole purpose of invoking New York’s shareholder record inspection statute. Interpreting Business Corporation Law § 1315 in the context of New York’s regulation of foreign corporations does not frustrate the policy of encouraging the sharing of information among shareholders because AirTran NY is free to request MAG’s shareholder records pursuant to Wisconsin’s inspection statute when it is qualified to do so. It may also continue to reach shareholders through press releases, Web sites, or other available means.
Based on the foregoing, it is ordered that AirTran NY’s motion seeking production of MAG’s shareholder lists is denied.

. The refusal was contained in a letter dated January 22, 2007 from MAG Senior Vice President, Secretary, and General Counsel, Carol Skornicka, to Richard E Magurno, Manager of AirTran New York, LLC.

. Business Corporation Law § 1301 (a) states that “[a] foreign corporation shall not do business in this state until it has been authorized to do so as provided in this article.”

. Business Corporation Law § 1312 relates to actions or proceedings brought by unauthorized corporations and states
“[a] foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute.” (Business Corporation Law § 1312 [a].)

. Article I, § 8 (3) of the United States Constitution.

. See also New York State Department of State, Legal Memorandum CO01, “Doing Business” in New York: An Introduction to Qualification, General Guidelines (Feb. 2000) (explaining foreign corporation qualification statutes or “Business Corporation Law § 1301(b) and its analogs” and taxation of foreign corporation statutes require a higher level of “doing business” than personal jurisdiction statutes in order to uphold the Due Process and Commerce clauses of the US Constitution).