[844 NYS2d 233]

AirTran New York, LLC, Appellant, v Midwest Air Group, Inc., Respondent.

First Department, October 25, 2007

## APPEARANCES OF COUNSEL

*Smith, Gambrell & Russell, LLP*, Atlanta, Georgia (*John Despriet*, of the Georgia bar, admitted pro hac vice, and *James E. Connelly* of counsel); and *Niehaus LLP*, New York City (*Paul R. Niehaus* of counsel), for appellant.

*Sidley Austin LLP*, New York City (*Andrew W. Stern, Steven M. Bierman* and *Isaac S. Greaney* of counsel), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal, from the denial of a New York shareholder's motion to compel production of the shareholder lists of a foreign corporation pursuant to Business Corporation Law § 1315 (a), concerns the standard under that statute for "doing business" in this state, which, in turn, will determine whether the statutory relief sought is available. Plaintiff contends that section 1315 (a) should be construed to afford the broadest relief to New York residents, while defendant asserts that the section should be narrowly construed in favor of foreign corporations.

The issue arises in the context of the efforts of AirTran Holdings, Inc. (AirTran) to pursue a merger with defendant Midwest Air Group, Inc., a publicly traded foreign corporation, a subsidiary of which, Midwest Airlines (Airlines), is duly registered and authorized to do business in this state. Initially, AirTran made a private offer to purchase the company for $11.25 per share. Defendant refused the offer on December 7, 2006 and, on January

11, 2007, AirTran announced a tender offer for the outstanding shares.[1] Plaintiff, AirTran New York, LLC, AirTran's subsidiary, purchased 100 of defendant's shares on January 12, and four days later, demanded defendant's shareholder lists as of the close of business on January 19 pursuant to Business Corporation Law § 1315. Defendant did not produce the lists, responding on January 22 that it was not "a 'foreign corporation doing business in' New York within the meaning of Section 1315."[2]

The day after defendant's rejection, plaintiff filed the complaint in the instant action and, simultaneously, by order to show cause, sought to compel defendant to produce its shareholder lists so that Air Tran could contact the shareholders directly to inform them of its most recent offer. Plaintiff alleges that defendant, although not registered to do business in New York, is "directly doing business" in this state in that it has New York airport slots pledged as security to its noteholders, New York ground facilities and routes in New York that generate revenue. Plaintiff also maintains that defendant does business in New York through its wholly owned subsidiary, Airlines, which operates 15 flights daily out of LaGuardia Airport and is an agent or mere department of defendant.

Plaintiff claimed that defendant and Airlines are interconnected, interdependent and interchangeable:

(a) Defendant decides how many promotional flights (through its frequent flier program) are available on each flight.

(b) Defendant provides the insurance for all of Airlines' flights.

(c) Airlines is not financially independent and has been provided with operating capital by defendant, which took on debt and pledged assets to raise $31,100,000.

(d) Defendant services all of Airlines' debt.

(e) Defendant derives 70% of its annual revenue from the operations of Airlines and reports Airlines' assets, liabilities and income on its consolidated financial statements.

Plaintiff supported its motion to compel production of the shareholder lists with an affidavit pursuant to Business

---

1. The planned acquisition vehicle is Galena Acquisition Corp., a Delaware corporation and wholly owned subsidiary of AirTran that was organized specifically for the merger.

2. Business Corporation Law § 1315 (a) provides that a New York resident who is a shareholder of a foreign corporation "doing business" in this state may require that it produce a record of its shareholders upon at least five days' written notice.

Corporation Law § 1315 (b), stating that the lists were not being sought for an improper purpose and that it had not sold or offered for sale any shareholder list within five years. A hearing on the order to show cause, authorized by section 1315 (c) to expedite relief during fast-moving tender offers, was scheduled for January 30, 2007.

In opposition to the motion, defendant insisted it was not doing business in New York within the "narrow" meaning of section 1315. Its chief financial officer denied that defendant owned any aircraft in New York or held any slots at New York State airports, and asserted that defendant had no offices, personnel, realty or bank accounts in New York. He argued that Airlines does not function as a department of defendant, noting that they maintain separate accounts and records.[3]

Plaintiff argued that the more easily satisfied CPLR 302 standard for doing business should apply to Business Corporation Law § 1315 because the right to inspect shareholder lists should be liberally construed. It maintained that Commerce Clause concerns—the avoidance of any infringement on congressional power to regulate commerce—that underlie the imposition of a stricter standard for "doing business" under other provisions of Business Corporation Law article 13 do not apply to section 1315. Based on the broader standard, according to plaintiff, defendant is directly doing business in New York and indirectly doing so through Airlines. Defendant argued that "doing business" has the same meaning throughout article 13, a standard it does not meet. Defendant further maintained that the activities of its subsidiary cannot be imputed to it.

Supreme Court denied plaintiff's motion to compel production,[4] relying on *Hovey v De Long Hook & Eye Co.* (211 NY 420 [1914]), which, interpreting section 1315's predecessor, held that its phrase, "transaction of business," must be interpreted in the context of the "entire system for the supervision, regulation and taxation of foreign corporations" because the language

---

**3.** While plaintiff included a "supplemental" submission consisting of documents purporting to show that defendant and Airlines are interdependent and interchangeable, the submission was improper and we do not consider it since it was, essentially, an unanswerable reply seeking to remedy deficiencies in the original moving papers (*see Schulte Roth & Zabel, LLP v Kassover,* 28 AD3d 404 [2006]).

**4.** Although the court's decision ends with a decretal paragraph denying the motion, the disposition box marked "final" on the gray sheet attached to the decision was checked, and the clerk's office marked the case disposed. We view the order as merely denying the motion and the action as still pending.

should be "construed harmoniously with that employed in other statutes which are part of this system" (*id.* at 424). Thus, Supreme Court found the meaning of "doing business" in section 1315 to be the same as in Business Corporation Law §§ 1301 (foreign corporations shall not "do business" in this state unless authorized) and 1312 (unauthorized foreign corporation "doing business" in this state may not maintain an action or special proceeding in this state), which both require a higher level of "doing business" than the general jurisdiction statute in CPLR 302, to avoid infringing on the power of Congress to regulate interstate commerce.

The court noted that not mere isolated or occasional activity, but "some continuity of act and purpose" that is "systematic and regular," is required to constitute "doing business" under section 1312 (15 Misc 3d 467, 475 [2007]). In light of the presumption that a foreign corporation is doing business in the state of its incorporation, the court held that it is the burden of the party relying on section 1315 to establish such continuity and regularity. The court found that defendant's receipt of revenue from the New York sales of flights and its pledges of property located in New York as security were insufficient to constitute directly "doing business" in New York. It also found Airlines' New York activities to be insufficient to establish defendant's "doing business" indirectly. Finally, the court noted that plaintiff may seek shareholder lists through the inspection statutes of Wisconsin, where defendant is incorporated, and continue its efforts to reach shareholders through press releases, Web sites and other available means. This appeal followed. We reverse.

In our view, Supreme Court incorrectly interpreted Business Corporation Law § 1315's "doing business" as requiring the same heightened degree of continuous and regular activity as is required under section 1312. Supreme Court's ruling would require a New York resident seeking to obtain a shareholder list to show that a foreign corporation is engaged in sufficient intrastate activities to be treated as a domestic corporation. In so ruling, the court ignored the Court of Appeals' admonition that section 1315 "should be liberally construed in favor of the stockholder" (*Matter of Crane Co. v Anaconda Co.*, 39 NY2d 14, 20-21 [1976]). "The authority to inspect corporate books and records. . . . is traceable to the right given to partners to ascertain the names of other partners and the condition of the business," the conceptual basis of which is derived from the "shareholder's

beneficial ownership of corporate assets and the concomitant right to protect his investment" (*id.* at 18).

Instead of liberally construing the statute in favor of resident shareholders, Supreme Court, citing a desire "to avoid imposing burdens upon foreign corporations" and viewing section 1315 as "regulat[ing] foreign corporations," reasoned that the term "doing business" should be construed "consistently" with the use of the term elsewhere in the Business Corporation Law (15 Misc 3d at 475). In our view, Supreme Court's reasoning was wrong on two counts. The conclusion that section 1315 regulates commerce, and thus requires a heightened standard for doing business, is contradicted by clear legal precedent. The holding that like terms should be interpreted identically within the framework of the Business Corporation Law is belied by the fact that the term at issue—"doing business"—is used differently even within the same chapter of the statute.

No sound basis exists for interpreting article 13 of the Business Corporation Law as an integrated statutory scheme with the same standard for "doing business" applicable to each section in the article. In fact, the article is an amalgam of independent statutes dealing with various aspects of foreign corporations—registration as a requirement to bring an action or special proceeding (§ 1312), subject matter jurisdiction (§ 1314), shareholder access to corporate information (§ 1315) and officer liability (§ 1317)—compiled and codified within article 13 from several statutes that were not enacted at the same time under a unitary legislative scheme, and placed together simply as a matter of drafting convenience. One of the earliest references to foreign corporations was enacted as part of the General Corporation Law more than a century ago (L 1890, ch 563, § 12). The precursor of Business Corporation Law § 1312 was added 80 years ago (L 1927, ch 425). Section 1315, enacted in its present form in 1961 upon the advent of the Business Corporation Law in place of the General Corporation Law and the Stock Corporation Law, was intended to give New York holders of shares in foreign corporations the same right of inspection as under Business Corporation Law § 624 for those holding shares in New York corporations (*see Crane,* 39 NY2d at 19). Thus, article 13 is far from an integrated whole warranting the assumption that "doing business" should be construed by the same standard throughout (*cf. Calabrese v HealthNow N.Y., Inc.,* 12 AD3d 11, 13 [2004]; *Catlin v Sobol,* 77 NY2d 552, 559 [1991]).

In ruling that "doing business" under article 13 should be construed consistently throughout the statute, Supreme Court

took the heightened "doing business" standard of section 1312 and applied it to section 1315. The heightened standard of section 1312 is not, however, the only standard employed in the article. The courts have employed two different standards to determine when a foreign corporation is doing business in New York, depending on the particular section of article 13 under consideration. Section 1312 (a), which denies an unauthorized foreign corporation "doing business" in this state capacity to sue here, employs a heightened "doing business" standard, fashioned specifically to avoid unconstitutional interference with interstate commerce under the Commerce Clause (*see Tauza v Susquehanna Coal Co.*, 220 NY 259, 267-268 [1917]).

Since Business Corporation Law § 1312 constitutes a statutory barrier to the foreign corporation's right to bring suit, the party seeking to impose the barrier, in order to rebut the presumption that the corporation does business in its state of incorporation rather than New York, has the burden of proving that the foreign corporation's activity in New York is systematic and regular (*Alicanto, S. A. v Woolverton*, 129 AD2d 601, 602 [1987]; *see Acno-Tec Ltd. v Wall St. Suites, L.L.C.*, 24 AD3d 392 [2005]). The burden of showing "doing business" is therefore a heavy one since a lesser showing might infringe on Congress's constitutional power to regulate interstate commerce. The same concern applies to the section 1301 requirement that a foreign corporation be authorized to "do business" in New York. Those concerns do not apply to section 1315 (a), which implicates neither the restriction of a right nor the fear of constitutional infringement.

Business Corporation Law § 1314, which determines when New York has subject matter jurisdiction over an action by a foreign corporation against another foreign corporation, employs CPLR 302's standard "doing business" test (*see Simonson v International Bank*, 14 NY2d 281 [1964]; *ABKCO Indus. v Lennon*, 52 AD2d 435, 440 [1976]). This standard is met if a New York court could exercise general jurisdiction over a foreign corporation consistent with the Due Process Clause. Courts have extended this jurisdictional standard to Business Corporation Law § 1317's imposition of liability for corporate mismanagement on "directors and officers of a foreign corporation doing business in this state" (*see e.g. Air India v Pennsylvania Woven Carpet Mills, Inc.*, 978 F Supp 500, 503 [SD NY 1997]).

Since Business Corporation Law § 1312's heightened "doing business" standard is a higher hurdle than CPLR 302's and the

traditional standard of Business Corporation Law §§ 1314 and 1317, two different standards are already employed in the same article, neither of which can be favored over the other in the name of consistency, as Supreme Court did in determining the standard for doing business under Business Corporation Law § 1315. The proper standard can be found in the rules of statutory construction, in legislative intent and in precedent.

Supreme Court also based its decision, in part, on the premise that section 1315, which merely provides a local forum for the exercise of a statutory right by New York residents, regulates foreign corporations. The use of a state's courts to reach a corporation doing business within the state for the purpose of availing oneself of a state statutory remedy or pursuing a common-law tort action does not implicate impermissible regulation (*see International Harvester Co. of America v Kentucky*, 234 US 579, 588 [1914]; *Tauza v Susquehanna Coal Co.*, 220 NY at 267-268). *Sadler v NCR Corp.* (928 F2d 48, 56 [2d Cir 1991]) has squarely addressed and rejected the motion court's conclusion that Business Corporation Law § 1315 regulates foreign corporations:

> "Equally unavailing is the claim that section 1315 imposes unjustified burdens on interstate commerce. It is difficult to discern any burden imposed on interstate commerce by section 1315, and, even if some slight burden could be identified, it is adequately justified by the legitimate local interest in protecting local shareholders."

Neither defendant nor the motion court has identified any specific manner in which the statute regulates a foreign corporation in violation of the Commerce Clause.

Nor has any New York court, other than the motion court, held that requiring a foreign corporation to turn over a shareholder list violates the Commerce Clause in that such a requirement unduly regulates the corporation. Thus, a proper application of the rules of statutory construction and due respect for the Court of Appeals' admonition that Business Corporation Law § 1315 be broadly construed lead to the conclusion that "doing business," as used in the statute, should be interpreted consistently with the precedents applying the usual standard for doing business.

In denying relief to plaintiff, Supreme Court also erred in considering the availability of similar relief in Wisconsin,[5] and whether other means of communication were available to a resident shareholder. Since Business Corporation Law § 1315 provides both the substantive right and an in-state procedural device for New York residents to obtain a shareholder list, an interpretation of the statute that considers the availability of relief in another jurisdiction improperly frustrates that remedy (*see Pyrke v Standard Acc. Ins. Co.*, 144 Misc 53, 56 [1932] ["(s)tatutes should be construed with a view of giving force to the intent of the Legislature and not such construction made as will render them impotent"]). Courts have awarded relief under section 1315 against corporations, the home states of which had more restrictive shareholder access statutes than New York (*see Madison Liquidity Invs. 103 v Carey*, 291 AD2d 362 [2002]).

Since different sections of the Business Corporation Law have attached two distinct meanings to the statutory term "doing business," the question presented by this appeal is which standard applies in a section 1315 case: the Commerce Clause-driven heightened standard of section 1312, or the usual standard within the bounds of due process as used in sections 1314 and 1317. Inasmuch as there are no Commerce Clause concerns in a section 1315 demand for a shareholder list and courts consistently take New York jurisdictional laws to the constitutional limit, the heightened standard applied by the motion court was inappropriate. The proper standard to be applied, given the broad remedial purpose of the statute, the lack of a Commerce Clause concern in the demand for a shareholder list and in light of the doctrine of constitutional avoidance, is New York's usual standard for doing business.

The usual standard of "doing business" derives from the interpretation of CPLR 301, which codified the common-law concept of general personal jurisdiction. Judge Cardozo's statement that a foreign corporation is doing business for purposes of amenability to lawsuit by virtue of its presence in this state "not occasionally or casually, but with a fair measure of permanence and continuity" (*Tauza*, 220 NY at 267) has been carried forward, under CPLR 301, according to *Landoil Resources Corp. v Alexander & Alexander Servs.* (77 NY2d 28, 33-34 [1990])."Doing business" in New York may also give rise

---

**5.** Wisconsin requires a resident stockholder with less than 5% ownership to have held its shares for at least six months before seeking the corporation's shareholder list (Wis Stat § 180.1602 [2] [b] [1] [2006]).

to long-arm jurisdiction for tortious acts committed without the state causing injury within the state under CPLR 302 (a) (3) (i) (although the statute specifically states that the business must be done "regularly" or that the course of conduct be "persistent"). As noted, in the case of both sections 1314 and 1317 of the Business Corporation Law, New York courts have applied the traditional jurisdictional standard for doing business to the statutory term "doing business" (*see ABKCO Indus.*, 52 AD2d at 440; *Air India*, 978 F Supp at 503 n 16).

The explanation for the two standards in interpreting the term "doing business" lies in the doctrine of constitutional avoidance, which seeks to give the broadest interpretation to a statute while avoiding an unconstitutional construction (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 150 [c]; *Tauza*, 220 NY at 267). Applying the doctrine of constitutional avoidance to Business Corporation Law § 1315 leads to the conclusion that the higher Commerce Clause standard is unnecessary and therefore inapplicable. The only qualification limiting this statutory right is that the corporation be "doing business." While the broadest interpretation of the term, viz., a single instance of business activity in New York, would probably render the statute unconstitutional, application of the Due Process Clause standard eliminates the issue and gives the greatest remedial effect to the section.

No other clause of the Constitution compels a higher standard. Business Corporation Law § 1315 does not burden commerce, much less impermissibly burden it (*see Sadler,* 928 F2d at 53-56). *Sadler* also rejected the argument that section 1315 subjected foreign corporations to inconsistent regulation of their internal affairs (*id.* at 54-55). Thus, there is no lurking potential Commerce Clause issue with respect to section 1315 that would require adoption of the heightened standard for doing business under the section 1312 line of cases.

Nor, in enacting section 1315, did the Legislature intend to adopt a heightened standard. At common law, resident shareholders had no right to inspect the records of foreign corporations. Over time, the courts extended the right to inspect to registered foreign corporations and those "that submit[ ] to New York's jurisdiction" (15 Misc 3d at 472; *People ex rel. Solomon v Brotherhood of Painters, Decorators & Paperhangers of Am.*, 218 NY 115, 119 [1916] ["When a foreign corporation accepts a license to do business in this state or does some act which subjects itself to the jurisdiction of this state, it may be

treated as a domestic corporation to the extent of rendering it subject to the writ of mandamus"]). This was the status of the law when resident shareholder rights were codified in 1961. *Solomon*, it should be noted, postdates *Hovey v De Long Hook & Eye Co.* (211 NY 420 [1914], *supra*), upon which Supreme Court relied for the "doing business" standard to be applied. Furthermore, it can be fairly said that *Solomon* was the law that was codified by the Legislature in Business Corporation Law § 1315 (*see Archer v Equitable Life Assur. Socy. of U. S.*, 218 NY 18, 22 [1916] ["in addition to the language, the relevant conditions existing when it was adopted" should be considered when interpreting a statute]).

There is nothing to suggest that the Legislature, in 1961, was seeking to limit the applicability of a shareholder's right when, for the past 45 years, corporate records had been available to the extent that "the jurisdiction of [a New York] court" could compel a corporation to produce them (*Matter of Lehrich v 6th Ave. Bancorporation, Inc.*, 251 App Div 391, 394 [1937]; *see Crane*, 39 NY2d at 19-20 [concluding that the 1961 amendment "was deemed to work no substantive change in the law"]). As the Court of Appeals noted in *Crane*, Business Corporation Law § 1315 "should be liberally construed in favor of the stockholder" (*id*. at 20-21). In fact, section 1315 was recently amended (L 1997, ch 449, § 69) to strike restrictive shareholder eligibility requirements, further supporting an interpretation that maximizes the shareholder's rights under the statute. Contrary to the motion court's conclusion, shareholder access statutes and judicial precedent were "intended to remedy management recalcitrance" and place "the burden of establishing improper purpose . . . on the corporation," not the shareholder (*Crane*, 39 NY2d at 19).

Applying the proper standard, it is clear that defendant, through its wholly owned subsidiary (Airlines) and acting as its principal, is doing business in New York. As Airlines is undisputably bound by the law of New York and subject to its jurisdiction, by virtue, inter alia, of its registration to do business in New York, defendant is similarly bound by the actions of its agent. When a subsidiary provides services sufficiently important to a foreign corporation that, but for the subsidiary's actions, the parent company's employees and officers would have to enter the state to provide those services themselves, it becomes the agent of the parent (*Gelfand v Tanner Motor Tours, Ltd.*, 385 F2d 116, 120-121 [2d Cir 1967], *cert denied* 390 US

996 [1968]). "To come within the rule, a plaintiff need demonstrate neither a formal agency agreement nor that the defendant exercised direct control over its putative agent" (*Wiwa v Royal Dutch Petroleum Co.*, 226 F3d 88, 95 [2d Cir 2000] [citation omitted], *cert denied* 532 US 941 [2001]). What is essential is that the agent be primarily or exclusively employed by the principal and not be engaged in similar services for other clients (*id.*).

As the record shows, defendant claims to be no more than a holding company, which does not conduct business directly, but only through its subsidiary. The parent-subsidiary relationship is enough to give rise to a strong inference of a broad agency relationship (*see Frummer v Hilton Hotels Intl.*, 19 NY2d 533, 538 [1967], *cert denied* 389 US 923 [1967]; *Bellomo v Pennsylvania Life Co.*, 488 F Supp 744, 746 [SD NY 1980] ["Where . . . the subsidiaries are created by the parent, for tax or corporate finance purposes, to carry on business on its behalf, there is no basis for distinguishing between the business of the parent and the business of the subsidiaries"]). In such circumstances, "[t]here is a presumption, in effect, that the parent is sufficiently involved in the operation of the subsidiaries to become subject to jurisdiction" (*id.*).

It is apparent that Airlines is doing in New York what defendant would do if it were here instead. Defendant's business is to transport passengers and cargo via airplanes to selected destinations. Airlines does all the business in New York that defendant could if it were operating the airline itself. Given that defendant, a shell holding company, functions in New York through its sole operational subsidiary, it is, for jurisdictional purposes and the obligation to make available its shareholder list, doing business in New York. Under this analysis, it is not necessary—as in the case of seeking to impose tort or contractual liability on a corporate parent, where the wholly owned nature of the subsidiary alone will not justify veil piercing (*see e.g. Canon Fin. Servs. v Medico Stationery Serv.*, 300 AD2d 66 [2002]; *Ansonia Assoc. v Quick Park Ansonia Garage Corp.*, 259 AD2d 308 [1999])—to show, in addition to dominion and control, that the subsidiary was used as an instrumentality of wrongdoing (*see TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335 [1998]). Under the liberal provisions of Business Corporation Law § 1315, wrongdoing should not be part of the inquiry.

We have considered the other issues raised and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Helen E. Freedman, J.), entered on or about February 20, 2007, which denied plaintiff's motion to compel the production of defendant's shareholder lists pursuant to Business Corporation Law § 1315 (a), should be reversed, on the law, with costs and disbursements, the motion granted and the matter remanded to Supreme Court to set an appropriate timetable and the mechanics of said production.

SAXE, J.P., GONZALEZ, CATTERSON and KAVANAGH, JJ., concur.

Order, Supreme Court, New York County, entered on or about February 20, 2007, reversed, on the law, with costs and disbursements, plaintiff's motion to compel the production of defendant's shareholder lists granted and the matter remanded to Supreme Court to set an appropriate timetable and the mechanics of said production.